UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JACOB R. SHEMPER, Individually and on
behalf of all others similarly situated                    PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 2:10-cv-138-KS-MTP

BP P.L.C.; BP AMERICA INC.; BP PRODUCTS                    DEFENDANTS
NORTH AMERICA INC; BP AMERICA
PRODUCTION COMPANY; BP EXPLORATION
& PRODUCTION INC.; ANADRKO PETROLEUM
CORPORATION; MOEX OFFSHORE 2007, LLC;
TRANSOCEAN LTD.; TRANSOCEAN DEEPWATER,
INC.; TRANSOCEAN OFFSHORE DEEPWATER
DRILLING, INC.; TRANSOCEAN HOLDINGS, LLC;
TRITON ASSET LEASING GmbH; HALLIBURTON
ENERGY SERVICES, INC.; CAMERON
INTERNATIONAL CORPORATION f/k/a
COOPER CAMERON CORPORATION; M-I, LLC;
WEATHERFORD INTERNATIONAL, LTD;
JOHN AND JANE DOES A-Z; and
CORPORATIONS A-Z

**BRIEF IN SUPPORT OF HALLIBURTON ENERGY
SERVICES, INC.'S MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

This putative class action arises from the Deepwater Horizon oil spill in the Gulf of
Mexico.  Plaintiff is a charter fishing captain who generally complains that unspecified
negligence by one or more of the defendants caused the Deepwater Horizon explosion and
subsequent oil spill, allegedly resulting in Plaintiff's loss of revenue from his inability to access
unspecified waters and fisheries along the Gulf Coast.  Plaintiff does not, however, state legally
viable causes of action against Halliburton Energy Services, Inc. ("HESI") and, in any event, the
Court lacks subject matter jurisdiction over Plaintiff's claims.

HESI respectfully moves the Court to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and for failure to state a claim upon which relief can be granted.  Although Plaintiff carefully avoids stating the precise legal bases for his claims, instead asserting generic tort theories, application of the undisputed facts reveals that Plaintiff's claims necessarily arise under federal law and, in particular, the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq.* ("OPA"), which constitutes the exclusive federal remedy for the categories of oil spill-related damages he alleges.  As such, the Court lacks subject matter jurisdiction over those claims because Plaintiff did not satisfy or plead having satisfied OPA's mandatory claims presentment process.  Independently, moreover, Plaintiff cannot state a claim as to HESI because his claims may only properly be asserted against a designated "responsible party," which HESI is not.

Finally, even assuming arguendo the Court possessed subject matter jurisdiction and Plaintiff could assert such claims against HESI, neither of which is true here, Plaintiff's allegations are woefully inadequate under the Supreme Court's *Twombly/Iqbal* pleading standard, the economic loss rule precludes Plaintiff's recovery of damages for the inability to fish, and punitive damages are not recoverable here as a matter of law.  At each turn, Plaintiff's claims against HESI fail on the face of the pleadings.  Therefore, HESI respectfully moves the Court to dismiss all claims asserted against it.

### INTRODUCTION AND SUMMARY

Plaintiff's claims stem from the April 20, 2010 explosion on the Deepwater Horizon, an ultra-deepwater, dynamically-positioned semi-submersible off-shore drilling rig owned by Transocean, and subsequent oil spill that "stemmed from an oil well blowout." (Class Action Complaint ("Complaint") at ¶¶ 1, 20-24, 33).  At the time of the explosion, Transocean owned

the Deepwater Horizon and BP leased it "to drill exploratory wells at the Macondo prospect site in Mississippi Canyon Block 252 ('Macondo'), a location on the outer continental shelf." (Complaint at ¶¶ 35-36).   In the course of BP's drilling operation, "a series of explosions occurred on the Deepwater Horizon.   These explosions ensued due [to] the release of reservoir pressure and a blowout, which funneled flammable gases into the oil rig."  (Complaint at ¶ 89). Two days later, the Deepwater Horizon sank.   (Complaint at ¶ 89).   While "oil began to discharge into the Gulf of Mexico" almost immediately after the explosion, the rate of discharge increased once the Deepwater Horizon sank to the ocean floor.   (Complaint at ¶¶ 91, 93). Shortly afterwards, the Coast Guard first designated BP as a "responsible party" for that release of oil under OPA.[1]

Plaintiff is a "full-time 'for hire' charter fishing captain" who "operates an inshore charter fishing and guide services business."   (Complaint at ¶ 9).   Although he does not identify any specific areas affected, Plaintiff generally alleges that his business has been "damaged  due to the ongoing pollution of these fishing grounds."   (Complaint at ¶ 9).   And he contends that he "has already began [sic] to suffer cancellations of previously scheduled fishing excursions, and faces a continuing decline in business" due to damage to "much of the region's fisheries."   (Complaint at ¶ 9).   Plaintiff's damages allegedly arise both from unquantified injury to the food chain in unspecified areas and from potential customers' fears relating to booking charter fishing trips. (Complaint at ¶¶ 113-115).   In short, Plaintiff asserts that he has experienced "business interruption due to cancellations of fishing charters" because he cannot access "enormous areas

---

[1] Courts may consider facts not specifically alleged in the Complaint when considering a 12(b)(6) motion.  *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) ("materials that are part of a public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(B)(6) motion"); *see also Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *In re Refined Petroleum Products Anti-Trust Litig.*, 649 F. Supp. 2d 572, 578 (S.D. Tex. 2009) (finding courts may refer to public records in deciding a motion to dismiss for failure to state a claim).

of the Gulf of Mexico", he cannot access unspecified inshore fisheries and fishing grounds, and potential customers' fears result in fewer bookings. (Complaint at ¶¶ 115, 118).

Without specifying what, if anything, HESI did wrong, Plaintiff generally alleges that negligence by one or more of the defendants caused the fire and explosion on board the Deepwater Horizon, its sinking, and the resulting oil spill. (Complaint at ¶¶ 128-150). He also claims that the oil spill constitutes both a private and a public nuisance actionable against the defendants. (Complaint at ¶¶ 151-171). Further, Plaintiff tries to impose strict liability on defendants by alleging that the drilling operations on the Deepwater Horizon were abnormally dangerous activities. (Complaint at ¶¶ 185-195). But notwithstanding Plaintiff's assertion of general tort theories, his action necessarily arises under and is governed by OPA, and the relief he seeks is precisely the type of relief encompassed by OPA.

Plaintiff's Complaint is devoid of any allegations detailing the specific damages that Plaintiff allegedly sustained or any HESI wrongdoing that caused him damage. His generalized, conclusory allegations, including the repeated assertion that "one or more" defendants took action, failed to act or had certain knowledge, fail to state a claim upon which relief may be granted. Nor, moreover, has Plaintiff properly invoked this Court's subject matter jurisdiction since his claims are governed by OPA yet he fails to satisfy a mandatory condition precedent to suit. Notwithstanding the circumstances under which this case arises and recognizing that Plaintiff may be afforded relief from BP under OPA, the Court should dismiss Plaintiff's suit against HESI both for want of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## RULE 12(B) LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action where the court does not have subject matter jurisdiction.  A motion to dismiss under Rule 12(b)(1) "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  In its resolution of a Rule 12(b)(1) motion, the court may consider: (1) the complaint alone; (2) the complaint and the undisputed facts in the record; or (3) the complaint, the undisputed facts in the record, and the court's own resolution of disputed facts.  *Ynclan v. Dep't of the Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).  Importantly, the burden of proving that jurisdiction exists remains with the party asserting jurisdiction. *Ramming*, 281 F.3d at 161.

Similarly, Rule 12(b)(6) provides defendants a mechanism early in litigation for challenging a plaintiff's right to recover on a particular set of facts or by a particular cause of action.  In reviewing a Rule 12(b)(6) motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  These "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 569-70.

## ARGUMENT AND AUTHORITIES

Although Plaintiff asserts general tort claims against all defendants, including HESI, for negligence, nuisance, and strict liability without specifying the applicable law, his claims necessarily arise – and fail – if at all exclusively under OPA.  His claims, after all, arise in the

context of an oil spill and he seeks recovery for the precise type of damages for which Congress designed OPA as the exclusive remedy. Further, Plaintiff has no legally viable state law claims for negligence, nuisance or strict liability against HESI because, to the extent such claims are viable outside of OPA (and they are not), they arise here under general maritime law, not under state law, and OPA specifically preempts general maritime law for claims recoverable under the statute.

Applying governing federal law, the Court should dismiss Plaintiff's claims against HESI. First, the Court lacks subject matter jurisdiction over Plaintiff's claims because he failed to first present his claims to the responsible party (BP) under OPA, which is a mandatory jurisdictional prerequisite to suit. Second, under the Supreme Court's pleading standards in *Twombly* and *Iqbal*, Plaintiff fails to plead sufficient facts to state a claim to relief *as to HESI* that is plausible on its face. Third, Plaintiff does not state a legally viable negligence, nuisance or strict liability cause of action against HESI because OPA is the exclusive remedy for his alleged damages. Fourth, Plaintiff's claims against HESI are not legally viable because his only claim lies as to BP under OPA. Fifth, Plaintiff's attempt to recover damages from his alleged inability to harvest or transact in seafood in which he has no proprietary interest is barred by the "economic loss" rule established under federal maritime law. Finally, because Plaintiff cannot recover punitive damages under either OPA or maritime law for the damages alleged, the Court should dismiss such claims. Therefore, HESI respectfully moves the Court to dismiss all claims against it for lack of jurisdiction and for failure to state a claim upon which relief can be granted.

**A.      Plaintiff's claims necessarily arise, if at all, exclusively under federal law.**

In his Complaint, Plaintiff asserts claims against HESI and other defendants generally for negligence, nuisance, and strict liability without specifying the legal basis, state or federal, for

those claims.  (Complaint at ¶¶ 128-171, 185-195).  Plaintiff, however, acknowledges that the Deepwater Horizon "was situated approximately 40 miles southeast of the Louisiana coast" and that the drill site was "a location on the outer continental shelf in the Gulf of Mexico." (Complaint at ¶¶ 1, 36).  Occurring outside state territorial waters, then, Plaintiff's general tort claims cannot naturally arise under state law.  Indeed, Congress enacted OPA as the exclusive remedy for damages incurred from oil spills, and Plaintiff even seeks recovery for alleged damages precisely of the type encompassed by OPA.  Further, Plaintiff has no legally viable state law claims for negligence, nuisance, or strict liability against HESI because, to the extent such claims are viable outside of OPA (which they are not), they would necessarily arise under general maritime law, not under state law, and OPA specifically preempts general maritime law for claims recoverable under the statute.[2]

Any effort by Plaintiff to rely on the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.* ("OCSLA") in an effort to apply state law to his claims arising outside of a state's territorial waters is misplaced.  Generally, OCSLA applies the law of "each adjacent State" to the situs of certain locations on the Outer Continental Shelf in certain circumstances as a proxy for federal law.  *See* 43 U.S.C. § 1333(a)(2)(A); *Gulf Offshore Co. v. Mobile Oil Corp.*, 453 U.S. 473, 480-81 (1981) ("OCSLA extends the 'Constitution and laws and civil and political jurisdiction of the United States' to the subsoil and seabed of the Outer Continental Shelf and to *'artificial islands and fixed structures'* built for discovery, extraction, and transportation of minerals. . . .  All law applicable to the Outer Continental Shelf is federal law, but to fill the substantial 'gaps' in the coverage of federal law, OCSLA borrows the 'applicable and not

---

[2] But for Congress's enactment of OPA, Plaintiff's claims would arise under the Court's admiralty jurisdiction, and general maritime law would apply, not state law.  Although Plaintiff does not specifically plead admiralty jurisdiction, federal maritime law applies.  *See* Fed. R. Civ. P. 9(h) ("A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated").

inconsistent' laws of the adjacent States as surrogate federal law." (citations omitted) (emphasis added)); *Texaco Exploration and Production, Inc. v. Amclyde Engineered Products Co, Inc.*, 448 F.3d 760, 772 (5th Cir. 2006) (same).  But OCSLA—and, thereby, adjacent state law—only applies if Plaintiff satisfies a three-part test: (1) the controversy must arise on a situs covered by OCSLA (*i.e.*, the subsoil, seabed, or artificial structure permanently or temporarily attached thereto); (2) federal maritime law must not apply of its own force; and (3) the state law must not be inconsistent with federal law.  *See Grand Isle Shipyard Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 784 n.3 (5th Cir. 2009) (*citing Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 355 (1969)).

Applying the first prong of this test, the Deepwater Horizon was *not* "a situs covered by OCSLA" because it was neither an "artificial island" nor a "fixed structure" to which OCSLA applies.  In this regard, the distinction between a "fixed platform" and a "vessel" is important.  In *Offshore Logistics, Inc. v. Tallentire*, the Supreme Court stated:

> The intent behind OCSLA was to treat the artificial structures covered by the Act as upland islands or as federal enclaves within a landlocked State, and *not as vessels*, for purposes of defining the applicable law because maritime law was deemed inapposite to these *fixed structures*.

477 U.S. 207, 217 (1986) (emphasis added).  Thus, the purpose of OCSLA is to apply state law to actions arising on or related to fixed platforms or structures attached to the Outer Continental Shelf, while maritime law continues to govern actions arising on or related to a "vessel."  Here, the Deepwater Horizon was, quite clearly, a vessel.  Plaintiff concedes as much, characterizing the Deepwater Horizon as "a semi-submersible off-shore drilling rig used in the exploration and production of sub-sea oil wells", as an "ultra-deepwater, dynamically-positioned semi-submersible oil drilling rig", and as "a mobile offshore drilling unit."  (Complaint ¶¶ 1, 33, 37). Plaintiff nowhere in his Complaint asserts that the Deepwater Horizon was a fixed platform.

Consistent with Plaintiff's descriptions, the Deepwater Horizon was a "vessel" operating in navigable water at all relevant times. Courts have consistently held that semi-submerged, mobile rigs like the Deepwater Horizon are "vessels," and not fixed platforms.[3] *See Manuel v. P.A. W. Drilling & Well Serv., Inc.*, 135 F.3d 344, 351-52 (5th Cir. 1998) (holding that drilling craft was a vessel because it was a "highly mobile unit" deployed to nineteen different sites over two years); *Domingue v. Ocean Drilling and Exploration Co.*, 923 F.2d 393, 394 n.1 (5th Cir. 1991) ("We have consistently applied general maritime law [in Jones Act cases] . . . to accidents aboard special-purpose watercraft such as submersible, semi-submersible, jack-up, and other similar rigs."); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 n.5 (5th Cir. 1986) (finding semi-submersible drilling rig to be "indisputably a vessel"); *Colomb v. Texaco, Inc.*, 736 F.2d 218, 221 (5th Cir. 1984) (finding submersible drilling barge to be a "vessel" because it was "highly mobile" due to routine relocation); *Case v. Omega Natchiq, Inc.*, No. H-08-0835, 2008 U.S. Dist. LEXIS 52931, at *16 (S.D. Tex. July 10, 2008) ("In contrast to production platforms, semisubmersible drilling rigs are generally considered vessels under the Jones Act."). Because the alleged torts neither occurred nor arose on a fixed platform or other artificial island over the Outer Continental Shelf, OCSLA does not apply. *See Grand Isle Shipyard*, 589 F.3d at 784 ("In

---

[3] That the Deepwater Horizon was a "vessel in navigation" is further supported by facts alleged in the public record. For example, certain Transocean employees and/or representatives of deceased persons who were aboard the Deepwater Horizon on April 20, 2010, have filed Jones Act suits asserting damages for injuries sustained in their capacity as "seamen" under the Jones Act. In doing so, these plaintiffs have asserted admiralty jurisdiction and the application of maritime law, claiming that their injuries or damages were sustained as members of the crew on board Deepwater Horizon, "a vessel within the meaning of the Jones Act, 46 U.S.C. §§ 30104, *et seq.*" *See, e.g.,* Plaintiffs Stephen and Sara Stones' Petition in Intervention at ¶¶ 9-10, 12, *Kleppinger v. Transocean Deepwater Offshore Drilling, Inc.*, Case No. 4:10-cv-01851 (S.D. Tex.).

Additionally, Transocean, the owner of the Deepwater Horizon, and related entities have filed a Petition under the Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.*, seeking to have their liability capped for an amount equal to the value of the "vessel." These Transocean entities have filed such Petition in their capacities as the "owner of the vessel." *See* 46 U.S.C. §§ 30505(a), 30506(a)-(b); *see also* 46 U.S.C. § 30511(a) ("The *owner of a vessel* may bring a civil action in a district court of the United States for limitation of liability under this chapter." (emphasis added)).

a tort action, if the tort occurs on navigable water instead of a fixed platform (or other structure attached to the seabed), the OCSLA situs requirement is not met.").

Second, maritime law applies of its own force to alleged torts arising out of the Deepwater Horizon incident. To determine whether admiralty jurisdiction exists over the alleged torts at issue, both a "location test" and a "connection-to-maritime-activity" test must be satisfied. *In re Katrina Canal Breaches Litig.*, 324 Fed. Appx. 370, 376 (5th Cir. 2009). The "location test" requires the tort to have occurred on navigable water or, for an injury suffered on land, to have been caused by a vessel on navigable water. *Id.* Plaintiff clearly alleges that the torts at issue occurred on navigable water. The allegedly negligent acts occurred *on* the Deepwater Horizon while it was afloat in navigable waters in the Gulf of Mexico. (*See* Complaint at ¶¶ 55-87, 128-171, 185-195). Moreover, any alleged injuries to fishing grounds or other natural resources undoubtedly occurred in the Gulf of Mexico's navigable waters. Thus, the location test for admiralty jurisdiction is satisfied.

Even if Plaintiff were to allege damage to shoreline real or personal property, which he does not, his claims would still arise under maritime law and not state law. The Admiralty Extension Act, 46 U.S.C. § 740, extends admiralty and maritime jurisdiction to "all cases of damages or injury, to person or property, *caused by a vessel on navigable water,* notwithstanding that such damage or injury be done or consummated on land." (emphasis added). *See also Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1031 (5th Cir. 1985), *cert. denied*, 477 U.S. 903 (1986) (under Admiralty Extension Act, admiralty jurisdiction extends to claims for shoreside damages resulting from chemical spill caused by colliding ships on navigable waterway); *In re the Exxon Valdez*, 767 F. Supp. 1509, 1512 (D. Ala. 1991) (under Admiralty

Extension Act, damages occurring on land due to oil spill emanating from vessel in navigable waters are maritime torts subject to admiralty jurisdiction).

Likewise, application of the "connection-to-maritime-activity" test also demonstrates that maritime law applies of its own force here.  Notably, "[o]il and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce."  *Theroit v. Bay Drilling Corp.*, 791 F.2d 527, 538-39 (5th Cir. 1986); *Pippen v. Shell Oil Co.*, 661 F.2d 378, 384 (5th Cir. 1981). Further, courts have concluded that oil spill cases involving seagoing vessels that spill oil directly into navigable waters are connected to maritime activity, and claims arising out of such oil spills (at least prior to the enactment of OPA) fall under general maritime law.  *In re Exxon Valdez*, 767 F. Supp. at 1512-14 (damage claims resulting from oil spill cognizable under maritime law because they were "caused by a vessel on navigable water"); *Puerto Rico v. S.S. Zoe Colocotroni*, 628 F.2d 652, 672 (1st Cir. 1980), *cert. denied*, 450 U.S. 912 (1981).

Since the conduct at issue here occurred on a vessel in navigable water and maritime law would apply of its own force, Plaintiff cannot utilize OCSLA to invoke adjacent state law. Instead, Plaintiff's claims naturally arise exclusively under federal law and, in particular, OPA. Accordingly, to the extent Plaintiff's general tort claims are being asserted under state law, the Court should dismiss them because state law is inapplicable.  Concomitantly, to the extent those general tort claims are being asserted under general maritime law, the Court should dismiss them as preempted or displaced by OPA.  In either event, OPA provides Plaintiff his exclusive recourse for the injuries alleged.

**B.      Plaintiff's failure to present his claims to BP through the OPA-mandated claims process deprives the Court of federal subject matter jurisdiction and precludes Plaintiff from asserting a legally viable cause of action here for recovery of damages related to the oil spill.**

---

Plaintiff's Complaint artfully avoids any mention of OPA, instead couching all claims in terms of negligence, nuisance, and strict liability.   Notwithstanding that careful pleading, however, Plaintiff's claims are necessarily federal and OPA provides the exclusive remedy for the oil spill-related damages Plaintiff asserts.   But the Court lacks subject matter jurisdiction to consider those claims because Plaintiff failed to comply with the Congressionally-mandated OPA claims process.

OPA provides a comprehensive statutory framework for parties who suffer damages from oil spills in navigable waters to make claims to a designated responsible party for recovery costs and damages.  *See* 33 U.S.C. §§ 2701, *et seq.*  Parties claiming to have suffered damages from an oil spill are required to present their claims to the designated responsible party before filing a lawsuit claiming damages:

> **all claims** for removal costs or damages **shall** be presented first to the responsible party or guarantor of the source designated under section 2714(a) of this title.

33 U.S.C. § 2713(a) (emphasis added).   Claimants may only initiate suit *after a claim is presented in accordance with § 2713(a)* and the responsible party denies all liability for the claim or the claim is not settled by payment within 90 days after the date upon which the claim was presented.  33 U.S.C. § 2713(c).  Pre-suit presentment is mandatory.

> The clear text of § 2713 creates a ***mandatory condition precedent*** barring all OPA claims unless and until a claimant has presented her claims in compliance with § 2713(a) and either: (1) all responsible parties deny all liability; or (2) the claim is not settled by payment within 90 days after (A) the claim was presented, or (B) advertising was begun under section 2714(b) of the Act, whichever is later.  33 U.S.C. § 2713(c).

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.,* 51 F.3d 235, 240 (11th Cir. 1995) (emphasis added).  *See also Gabarick,* 623 F. Supp. 2d at 750-51 (dismissing for lack of subject matter jurisdiction all non-OPA claims seeking damages of the type covered by OPA for failure

to present such claims to the designated responsible party); *LeBoeuf v. Texaco*, 9 F. Supp. 2d 661, 666 (E.D. La. 1998) (holding that § 2713 creates "mandatory conditions precedent to filing an action in either state or federal court"); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant"); *United States v. Murphy Exploration and Prod. Co.*, 933 F. Supp. 489 (E.D. La. 1996) ("We therefore hold that the clear text of § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claims in compliance with § 2713(a)").

OPA's plain language precludes the right to proceed in court without first exhausting the administrative process. *See Boca Ciega Hotel, Inc.*, 51 F.3d at 238 (noting that OPA's use of the absolute words "all" and "shall" indicate its mandatory and exclusive nature with respect to its covered damages); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310-11 (E.D. Va. 1993) (dismissing oil damage and removal claims upon finding that "[i]n this case, plaintiffs have not complied with the presentation requirement of OPA"); *see also* S. Rep. No. 101-94 (1989), reprinted in 1990 U.S.C.C.A.N. 722, 732 (hereinafter "Senate Report") (noting that "the bill requires claims to be presented in the first instance to the discharger, where known"). Where a plaintiff fails to satisfy OPA's presentment requirement, the court should dismiss the plaintiff's claims for lack of jurisdiction. *See Marathon Pipe Line Co. v. LaRoche Industries Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant."); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993) ("If

plaintiffs fail to comply with the prerequisites for bringing such a claim, the OPA claim must be dismissed").

Here, Plaintiff never alleges that he has presented his claim to a designated responsible party in accordance with OPA.  This Court, therefore, lacks jurisdiction to hear any of Plaintiff's claims related to the oil spill and should dismiss all such claims against HESI.

**C.  Plaintiff's claims fail to contain sufficient factual material to state a claim for relief against HESI that is plausible on its face.**

Inherent and fatal pleading deficiencies persist in Plaintiff's Complaint, revealing that, independent of the Court's lack of jurisdiction, Plaintiff fails to state a claim for relief that is plausible on its face.  Indeed, Plaintiff does not plead *any* facts supporting his negligence, nuisance, and strict liability claims against HESI.  Other than identifying it as "a Delaware corporation with its principal place of business in Houston, Texas", Plaintiff barely offers any facts regarding HESI's relationship to the Deepwater Horizon and his claims.  (Complaint at ¶ 26).  Plaintiff vaguely suggests, for example, that HESI "was engaged in drilling-related operations and support for the *Deepwater Horizon* both on and offshore."  (Complaint at ¶ 26).  Equally lacking in factual specificity, the Complaint also generally alleges that HESI was "responsible for cementing the well that was the subject of the Oil Spill, and further was engaged in testing, analysis, and monitoring of the aforementioned well."  (Complaint at ¶ 131).  Otherwise, Plaintiff's factual contentions, such as they are, merely postulate that "one or more" of several defendants, including BP, Anadarko, MOEX, Transocean, HESI, M-I, and Weatherford, may have acted, failed to act, and/or had certain knowledge.  While Plaintiff includes HESI in a group of defendants (*i.e.*, the so-called "Drilling Defendants"), he never asserts any facts as to acts, omissions or knowledge of HESI.

It is not enough for Plaintiff to simply aver in conclusory fashion that some unspecified acts or omissions by HESI—or, more precisely, by "one or more" of a group of defendants—somehow caused or contributed to the oil well blowout, explosion, and/or oil spill.  Nor is it enough to simply aver that HESI was negligent, that it was negligent per se, that it created a private or public nuisance, or that nonspecific acts were "abnormally dangerous activities" without alleging sufficient facts to support the plausibility of those legal conclusions.  A Rule 12(b)(6) motion tests the sufficiency of the pleadings.  Although the court accepts well-pleaded facts as true, the Supreme Court has rejected the former rule that a dismissal for failure to state a claim was improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim."  *Twombly*, 550 U.S. at 561-62.  Rather, to survive a Rule 12(b)(6) challenge, the "complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 570); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  This standard "does not require 'detailed factual allegations,' ***but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation***." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570) (emphasis added).

The courts' application of *Twombly* and *Iqbal* proceeds in two steps.  First, the court determines which allegations in the complaint are not entitled to the assumption of truth. *Id.* at 1950.  Courts reject attempts by plaintiffs to simply recite the elements of a cause of action or to "dress up" legal conclusions as factual allegations in determining whether a complaint contains sufficient factual information to "state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 555-56 ("[A] formulaic recitation of the elements of a cause of action will not do."); *Little v. USAA Cas. Ins. Co.*, No. 09-30948, 2010 U.S. App. LEXIS 6993, at *5-6 (5th

Cir. Apr. 2, 2010); *Taylor v. Books A Million*, 296 F.3d 376, 378 (5th Cir. 2002) (conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss).

Second, the court considers the remaining factual allegations that are entitled to the assumption of truth to determine whether they plausibly suggest an entitlement to relief. *Iqbal*, 129 S. Ct. at 1951.

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of "entitlement to relief."

*Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).  A claim only has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'"  *Id.*; *see also Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  In such cases, the complaint should be dismissed pursuant to Rule 12(b)(6).

Applying this pleading standard to the Complaint requires dismissal of all Plaintiff's claims against HESI.  First, Plaintiff's assertions of each of his claims, at best dressed-up legal conclusions, are not entitled to the assumption of truth.  Second, the only remaining factual allegations entitled to the assumption of truth as to HESI are its corporate status and the fact that it was purportedly engaged in some unspecified "drilling-related operations and support", was purportedly engaged in unspecified "testing, analysis, and monitoring," and had some vague responsibility for "cementing the well." (Complaint at ¶¶ 26, 131).  Those factual allegations do

not plausibly suggest an entitlement to relief and are not sufficient for the Court to draw any reasonable inference that HESI is liable for the sinking of the Deepwater Horizon and subsequent oil spill. *See Iqbal*, 129 S. Ct. at 1951.

Plaintiff fails to plead facts suggesting the plausibility of his claims as to HESI. With respect to his negligence claims, for example, Plaintiff essentially alleges that "one or more of the Drilling Defendants" failed to exercise reasonable care by engaging in some unspecified act or omission that caused the blowout and subsequent oil spill. (Complaint at ¶¶ 128-143). Plaintiff, however, fails to articulate any facts suggesting the plausibility of that legal conclusion as to "one or more of the Drilling Defendants" or, more germane to the instant motion, to HESI.[4] Plaintiff also concludes that one or more of the defendants violated "federal and/or state statutes and/or regulations" without ever identifying the defendant involved, the conduct at issue, how the conduct was a violation or, curiously, the statute or regulation involved (and whether it is federal or state). (Complaint at ¶¶ 141, 145-150).[5]

Likewise, Plaintiff concludes that the actions or inactions "of one or more of the Drilling Defendants" caused the discharge of oil, constituting a private and/or public nuisance. (Complaint at ¶¶ 151-171). Assuming *arguendo* such claims were viable, which they are not, Plaintiff fails to plead plausible claims. Plaintiff, for example, fails to plead facts supporting an injury different from the public to sustain his assertion of a public nuisance claim. Further, to establish a private nuisance claim under (inapplicable) Mississippi law, Plaintiff must demonstrate that HESI's conduct is a legal cause of an invasion in Plaintiff's private use and

---

[4] The pleading standard under *Twombly/Iqbal* necessarily "requires some articulation of the duty owed in these circumstances and how, as a factual matter, it was breached." *See Procentury Ins. Co. v. Harbor House Club Condominium Ass'n, Inc.*, 652 F. Supp. 2d 552, 560 (D.N.J. 2009).
[5] Separately, Plaintiff's reliance on Mississippi law to assert a negligence per se cause of action fails because Mississippi law does not apply to the conduct at issue.

enjoyment of land **and** that the invasion is either (i) intentional and unreasonable or (ii) unintentional but otherwise actionable as negligent, reckless or abnormally dangerous conduct. *See Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*, 521 So. 2d 857, 859-60 (Miss. 1988). "A private nuisance is a nontrespassory invasion of another's interest in the use and enjoyment of his property." *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 662 (Miss. 1995). That is not the case here. True to form, Plaintiff includes no facts supporting his legal conclusions or his assumption that one or more defendant "acted in an intentional and unreasonable, and/or negligent, grossly negligent, reckless, willful, and wanton manner." (Complaint at ¶¶ 158, 170). Plaintiff offers no facts suggesting an invasion in his use or enjoyment of his property, that any such invasion was intentional or that, while unintentional, any such invasion was independently actionable. There are, quite simply, no supporting facts as to either a private or public nuisance.

Not surprisingly, the same is true for Plaintiff's final claim, an assertion of strict liability for abnormally dangerous, ultrahazardous activities. (Complaint at ¶¶ 185-195). Initially, of course, such a claim is not legally viable under OPA or general maritime law. Instead, Plaintiff must rely again on inapplicable Mississippi state law for this claim. But even under Mississippi law, Plaintiff must demonstrate participation in an ultrahazardous activity before strict liability can be imposed for harm from industrial operations. *Bradley v. Armstrong Rubber Co.*, 130 F.3d 168, 174 (5th Cir. 1997). Generally, oil and gas well operations do not constitute "abnormally dangerous" activity under Mississippi law for the purposes of imposing strict liability. *Bolivar v. R&H Oil and Gas Co., Inc.*, 789 F. Supp 1374, 1383 (S.D. Miss 1991). Instead, Mississippi courts have only imposed strict liability for the use and transport of explosives in populated areas. *Id.*; *Teledyne Exploration Co. v. Dickerson*, 253 So. 2d 817, 818-19 (Miss. 1971). Indeed,

it is instructive that the courts have rejected attempts to extend this doctrine of strict liability to other activities. *Sprankle v. Bower Ammonia & Chemical Co.*, 824 F.2d 409, 416 (5th Cir. 1987) (storage of anhydrous ammonia in commercial manufacturing plant not abnormally dangerous); *Lewis v. Kinder Morgan Southeast Terminals, LLC*, Cause No. 2:07-cv-47-KS-MTP, 2008 U.S. Dist. LEXIS 61060 at *27-28 (S.D. Miss. August 6, 2008) (storage of gasoline at a bulk storage terminal not abnormally dangerous). Plaintiff, however, does not plead sufficient facts demonstrating that his claim for strict liability is plausible as to HESI.

The absence of supporting factual allegations is not surprising. In this lawsuit, Plaintiff essentially alleges that the oil spill will cause damage and that "one or more" of the defendants did something unspecified to cause it. That is not nearly enough to sustain a viable cause of action against HESI. *See Procentury Ins. Co.*, 652 F. Supp. 2d at 560-61 (holding that Plaintiff did not sufficiently plead claims under *Twombly/Iqbal* where it simply lumped the defendants together with no factual allegations as to specific defendant). As the Supreme Court observed, a plaintiff must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570) (emphasis added). Thus, under *Twombly*, *Iqbal* and their progeny, the Court should dismiss Plaintiff's claims against HESI in their entirety under Rule 12(b)(6).

**D.     Plaintiff's common law tort allegations are not legally viable because OPA provides Plaintiff's exclusive remedy for the recovery of oil spill-related damages.**

Although Plaintiff artfully pleads his negligence, nuisance, and strict liability claims to avoid mention of OPA, his claims are necessarily federal and arise, if at all, only under OPA. OPA is, in fact, the exclusive remedy for the types of damages alleged and Plaintiff cannot circumvent its application with general common law tort allegations. Instead, OPA displaces all such claims and otherwise applicable federal laws as they pertain to causes of action and the

recovery of damages arising from oil spills.  OPA was enacted by Congress in the wake of the Exxon Valdez oil spill to provide a prompt, federally-coordinated response to oil spills in navigable waters of the United States and to compensate innocent victims.  *Gatlin Oil Co. v. United States*, 169 F.3d 207, 209 (4th Cir. 1999)).   The statute provides a comprehensive statutory framework for parties injured by oil spills in navigable waters to make claims to a designated responsible party for recovery of costs and damages.  *See* 33 U.S.C. § 2701, *et seq.* OPA "represents Congress's attempt to provide a comprehensive framework in the area of marine oil pollution."  *Tanguis v. M/V WESTCHESTER,* 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (citing *Rice v. Harken Exploration Co.*, 89 F. Supp. 2d 820, 822 (N.D. Tex. 1999)).  *See also United States v. Bodenger*, No. 03-272, 2003 U.S. Dist. LEXIS 16987, at *5-6 (E.D. La. Sept. 26, 2003) (noting that OPA "established a comprehensive Federal oil spill response and liability legislative framework).   Its purpose is "to promote settlement and avoid litigation." *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993).

Under the statute, injured parties may recover a broad range of damages from the responsible party:

A) Natural resources

Damages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be recoverable by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee.

(B) Real or personal property

Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property.

(C) Subsistence use

Damages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources.

(D) Revenues

Damages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the Government of the United States, a State, or a political subdivision thereof.

(E) Profits and earning capacity

Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant.

(F) Public services

Damages for net costs of providing increased or additional public services during or after removal activities, including protection from fire, safety, or health hazards, caused by a discharge of oil, which shall be recoverable by a State, or a political subdivision of a State.

33 U.S.C. § 2702(b). Indeed, OPA provides the **exclusive federal remedy for recovery of oil spill related damages**, preempting non-OPA-based claims for recovery of those damages. *South Port Marine, LLC v. Gulf Oil Ltd. P'ship,* 234 F.3d 58, 65 (1st Cir. 2000) ("Congress intended the OPA to be the exclusive federal law governing oil spills."); *Gabarick v. Laurin Maritime (America) Inc.,* 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) ("This Court finds that an evaluation of the *Oswego* factors indicates that OPA preempts general maritime law claims that are recoverable under OPA."); *Seaboats, Inc. v. Alex C Corp.,* 2003 WL 203078 at *11 (D. Mass. Jan. 30, 2003). Addressing the preemptive effect of OPA, one court held that "all [general maritime law] claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA." *Gabarick,* 623 F. Supp. 2d at 750-51.

*See also National Shipping Co. of Saudi Arabia (NSCSA) v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, 1447 (E.D.Va. 1996) ("[b]ecause OPA provides a comprehensive scheme for the recovery of oil spill cleanup costs and the compensation of those injured by oil spills, the general maritime law does not apply to recovery of these types of damages").  "OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons." *National Shipping*, 924 F. Supp. at 1447.

Consequently, Plaintiff's effort to recover oil spill related damages covered by OPA under negligence, nuisance or strict liability theories must fail.  In the Complaint, Plaintiff complains about damage to "the gulf of Mexico's and Mississippi's marine and coastal environments, natural resources, estuarine areas, and commercial fisheries" and asserts that the oil spill "has already irrevocably harmed the waters and fisheries that Plaintiff and the Class rely on for their livelihoods and subsistence."  (Complaint at ¶¶ 2, 111).  Plaintiff contends that "[d]amage to these vital natural resources and habitats has and will continue to damage Plaintiff and the Class because they are reliant upon access to these areas and fisheries."  (Complaint at ¶ 116).  As a result, the Complaint continues, the oil spill "has caused and will continue to cause a direct and proximate loss of revenue and/or loss of earning capacity."  (Complaint at ¶ 118). These alleged damages are obviously encompassed by § 2702(b) of OPA.  Therefore, since "Congress intended the OPA to be the exclusive federal law governing oil spills," *South Port Marine*, 234 F.3d at 65-66, Plaintiff's non-OPA based claims for recovery of oil spill related damages fail as a matter of law, demanding dismissal under Rule 12(b)(6).

**E.     Plaintiff's sole remedy for alleged damages arising from the oil spill, if any, lies against a "responsible party" designated under OPA, not against HESI.**

Plaintiff cannot state a legally viable claim against HESI because, even assuming he eventually satisfies the jurisdictional presentment requirement, OPA limits Plaintiff to recovering

for oil spill related damages from a designated responsible party.  Under OPA, the responsible party for the vessel or facility from which an oil spill emanates is liable for all associated damages and removal costs:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, **each responsible party** for a vessel or facility from which oil is discharged… **is liable for the removal costs and damages** specified in subsection (b) that result from such incident.

33 U.S.C. § 2702(a) (emphasis added).  In the case of an oil spill originating from an offshore facility, OPA defines the "responsible party" as "the lessee or permittee of the area in which the facility is located."  33 U.S.C. § 2701(32)(C).  When a spill occurs, the Coast Guard designates the responsible party who is strictly liable for recovery costs and economic damages.  33 C.F.R. § 136.305.  *See also Gabarick*, 623 F. Supp. 2d at 744. ("When an oil spill occurs on U.S. navigable waters, the Coast Guard determines the source of the discharge and notifies a responsible party for that source.  A responsible party for a vessel from which oil is discharged is strictly liable for removal costs and damages"); S. Rep. No. 101-94 (1989), reprinted in 1990 U.S.C.C.A.N. 722, 723 (hereinafter "Senate Report") (noting that "wherever possible, the burden is to be on the discharger to first bear the costs of removal and provide compensation for any damages.").

Importantly, recourse against the designated responsible party is the sole remedy for those injured by an oil spill.  "OPA only imposes liability against responsible parties." *National Shipping*, 924 F. Supp. at 1446.  Any recovery as against third-parties is limited to an action for contribution *by the responsible party*, not direct claims by those alleging injury resulting from an oil spill.  *See* 33 U.S.C. § 2709.  As the *Gabarick* Court explained,

> [i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA discussed earlier, it appears that Claimants should pursue claims covered under OPA **only against the responsible party and in accordance with**

the procedures established by OPA.  Then, the responsible party can take
action to recover against third parties.

*Gabarick*, 623 F. Supp. 2d at 750 (emphasis added).  Plaintiff, therefore, can only state viable

claims against the responsible party and only in compliance with OPA's mandatory prerequisites.

Here, Plaintiff cannot assert any viable claims against HESI because it is not a designated

responsible party.  As in *Gabarick*, Plaintiff must pursue his claims under OPA, and he may only

do so against a designated responsible party.  HESI is not, as a matter of law, liable to Plaintiff

for his alleged damages resulting from the oil spill and the Court should dismiss all such claims

with prejudice under Rule 12(b)(6).

**F.     In the alternative, to the extent Plaintiff seeks recovery for damages arising from
fewer charter fishing excursions, the economic loss rule bars such claims.**

Assuming *arguendo* Plaintiff's negligence, nuisance, and strict liability claims against

HESI were not otherwise barred by OPA (*see supra*), the economic loss rule would still bar any

general maritime law claims seeking economic damages here.  In the Complaint, Plaintiff does

not allege that he has a proprietary interest in the fishing grounds allegedly affected by oil or in

the fish taken from such grounds.  Nor does the Complaint ever allege damage to any specific

proprietary interest.  Therefore, Plaintiff cannot recover for alleged economic losses.

Moreover, despite his assertion that he is a charter fishing captain and operates a charter

fishing and guide service business, any effort by Plaintiff to plead a proprietary interest would be

futile.  As a matter of law Plaintiff lacks a proprietary interest in aquatic life; ownership of

aquatic life is vested in the state.  *See* Miss. Code Ann. § 49-15-5 (2010).  Plaintiff lacks a

proprietary interest and likewise lacks standing to assert claims for damages to aquatic life.  The

Supreme Court of Mississippi, "by an unbroken line of decisions over 100 years, has declared

that the State 'is the owner of the lands in the beds of all its shores, inlets, and adjacent to the

islands, over which the tides of the sea ebb and flow, and that it holds title as trustee for the

people of the State.'" *Parks v. Simpson*, 137 So. 2d 136, 138-39 (Miss. 1962). Plaintiff's failure to plead physical injury to a proprietary interest, and lack of any such proprietary interest, is dispositive, barring him from recovery for economic losses against HESI.

A plaintiff cannot recover for economic loss under general maritime law absent physical damage to a proprietary interest. *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927). As the Fifth Circuit articulated, "[i]t is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit." *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006). *See also Reserve Mooring, Inc. v. Am. Commercial Barge Line, LLC*, 251 F.3d 1069, 1072 (5th Cir. 2001) ("[P]hysical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort."); *State of Louisiana v. M/V Testbank*, 752 F.2d 1019, 1022 (5th Cir. 1985);[6] *Kingston Shipping Co. v. Roberts*, 667 F.2d 34 (11th Cir. 1983). This is true even where a plaintiff raises the claim under a public nuisance theory. *Testbank*, 752 F.2d at 1030. The rule's purpose is to prevent limitless liability for negligence and the filing of lawsuits of a highly speculative nature. *Akron Corp. v. M/T Cantigny*, 706 F.2d 151, 153 (5th Cir. 1983).

Here, Plaintiff seeks recovery for purely economic losses. Specifically, he seeks recovery for "loss of revenue and/or loss of earning capacity." (Complaint at ¶ 118). Reading the Complaint as a whole, Plaintiff's alleged damages relate exclusively to his purported inability to continue charter fishing operations somewhere in the Gulf of Mexico. Although he might be able to recover for those injuries from a designated responsible party under OPA, he cannot do

---

[6] Although *Testbank* recognizes a narrow exception to this application of the economic loss rule, it is not applicable here because Plaintiff does not allege any facts establishing a course of business conduct in which he makes commercial use of a public right to fish in any specifically defined areas allegedly damaged by the oil spill.

so here against HESI under general theories of negligence, nuisance or strict liability because OPA preempts such claims and, independently, because the economic loss rule precludes recovery under general maritime law.  The Court, therefore, should dismiss Plaintiff's claims.

**G.     Plaintiffs cannot, as a matter of law, recover punitive damages from HESI.**

In addition to his claim for economic damages from alleged loss of revenue, Plaintiff also demands recovery of punitive damages.  (Complaint at 41).  As a matter of law, however, he cannot recover punitive damages.  OPA, which provides Plaintiff's exclusive remedy for damages resulting from the oil spill, does not permit the recovery of punitive damages.  *South Port Maine*, 234 F.3d at 66.  The statute's comprehensive list of recoverable damages is exclusive.  After all, "Congress intended the OPA to be the sole federal law applicable in this area of maritime pollution."  *Id.* at 65.  Thus, Plaintiff cannot recover punitive damages even if his claims were construed as maritime tort claims.  *See Clausen v. M/V New Carissa*, 171 F. Supp. 1127, 1133 (D. Or. 2001) (holding that OPA precludes recovery of punitive damages under any general maritime law theory for which OPA could provide relief).  Plaintiff's demand for the recovery of punitive damages, therefore, fails as a matter of law.

**H.     Alternatively, the Court should order Plaintiff to file a more definite statement detailing the facts, if any, supporting his claims against HESI.**

To the extent the Court exercises jurisdiction here (which it should not) and concludes that Plaintiff's claims survive OPA preemption (which they do not), the Court should require Plaintiff to file a more definite statement of his pleading pursuant to Rule 12(e).  Although the Complaint is lengthy, Plaintiff's allegations against HESI are, at best, vague and ambiguous.  As mentioned above, Plaintiff fails to assert any facts demonstrating Plaintiff's plausible entitlement to relief from HESI, including any factual suggestion as to what, if anything, HESI did wrong, any facts showing that HESI violated any duty to Plaintiff, or that any wrongdoing by HESI

proximately caused the damages about which Plaintiff complains. Adhering to the Supreme Court's guidance in *Twombly* and *Iqbal*, the Court should in the first instance dismiss Plaintiff's patently deficient pleading. In the alternative, if the Court declines to dismiss those claims, it should, at a minimum, require Plaintiff to file a more definite statement of his pleading pursuant to Rule 12(e).

### CONCLUSION

For the reasons set forth above, subject matter jurisdiction has yet to attach for Plaintiff's claims and, separately, he has failed to plead viable claims against HESI as a matter of law. Pursuant to Rule 12(b)(1) and Rule 12(b)(6), the Court, therefore, should dismiss Plaintiff's claims against HESI in their entirety.

**Respectfully Submitted,**

**HALLIBURTON ENERGY SERVICES, INC.**

**Donald E. Godwin** (Texas Bar # 08056500)
LEAD COUNSEL
dgodwin@godwinronquillo.com

**Bruce W. Bowman, Jr. (Texas Bar # 02752000)**
**Bbowman@godwinronquillo.com**

**Jenny L. Martinez** (Texas Bar # 24013109)
Jmartinez@godwinronquillo.com

***Floyd Hartley, Jr.*** *(Texas Bar # 00798242)*
*Pro Hac Vice motion to be filed.*
*ATTORNEY TO BE NOTICED*
Fhartley@godwinronquillo.com

**GODWIN RONQUILLO PC**
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Telephone: 214.939.4400
Facsimile: 214.760.7332

**R. Alan York** (Texas Bar # 22167500)
ayork@godwinronquillo.com

**GODWIN RONQUILLO PC**
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594
**Charles G. Copeland** (MBN 6516)
gcopeland@cctb.com

**COPELAND, COOK, TAYLOR, & BUSH, P.A.**
600 Concourse, Suite 100
1076 Highland Colony Parkway (39157)
P.O. Box 6020
Ridgeland, Mississippi 39158
Telephone (601) 856-7200
Facsimile (601) 856-7626

*s/David W. Stewart*
**David W. Stewart** (MBN 9040)
dstewart@cctb.com

**COPELAND, COOK TAYLOR, & BUSH, P.A.**
 2781 C.T. Switzer Sr. Drive, Suite 200
Biloxi, Mississippi 39531
Telephone (228) 863-6101
Facsimile (228) 868-9077

## CERTIFICATE OF SERVICE

I, DAVID W. STEWART, of the law firm of COPELAND, COOK, TAYLOR & BUSH, P.A., do hereby certify that I have this date electronically filed the foregoing Halliburton Energy Services, Inc *Brief in Support of Halliburton Energy Services, Inc.'s Motion to Dismiss* with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

> Michael Jacob Shemper at mjshemper@megagate.com
> Joseph F. Rice at jrice@motleyrice.com
> Kevin R. Dean at kdean@motleyrice.com
> Ronald L. Motley at rmotley@motleyrice.com
> Jason D. Watkins at watkinsjd@fpwk.com
> W. Wayne Drinkwater, Jr. at wdrinkwater@babc.com
> Jack L. Wilson at jwilson@babc.com
> Richard P. Salloum at rps@frslaw.com
> Robert C. Galloway at bob.galloway@butlersnow.com
> G. Todd Burwell at tburwell@gtbpa.com

So certified, this the 20th day of July, 2010.

> s/David W. Stewart
> DAVID W. STEWART
> Mississippi Bar No. 9040
> dstewart@cctb.com

Charles G. Copeland
David W. Stewart
COPELAND, COOK,
TAYLOR & BUSH, P.A.
Post Office Box 10
Gulfport, MS 39502
(228) 863-6101
(228) 863-1844 (fax)