**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

| | | |
|---|---|---|
| **Jacob R. Shemper,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | **2:10CV138-KS-MTP** |
| | * | |
| **BP PLC, et al.,** | * | |
| | * | |
| Defendants. | * | |

**BRIEF OF DEFENDANT CAMERON INTERNATIONAL CORPORATION IN
SUPPORT OF ITS MOTION TO DISMISS**

Defendant Cameron International Corporation ("Cameron") respectfully submits this brief in support of its motion to dismiss the Class Action Complaint in this case (hereinafter referenced as "Complaint" and cited as "Compl.") for failure to state a claim upon which relief can be granted against Cameron.  See Compl. [Doc. 1.]

**SUMMARY OF ARGUMENT**

The claims for economic loss asserted by Plaintiff Shemper are specifically addressed by the liability and claims payment provisions of the Oil Pollution Act of 1990 (hereinafter "OPA"), 33 U.S.C. § 2701 et seq.  Under OPA, the named Plaintiff was required to present his damage claims to one or more "responsible" parties as designated under OPA.  "Notwithstanding any other provision or rule of law," OPA makes any such responsible party liable to pay claims for the damages sought in the Complaint, and provides for recovery against the Oil Spill Liability Trust Fund for any claim or portion of a claim not paid by a responsible party.  These comprehensive and exclusive statutory remedies preclude Plaintiff's claims against Cameron

because it is not a designated responsible party.  On this ground, the claims against Cameron in the Complaint should be dismissed without prejudice.

In addition, the damage claims asserted in the Complaint by Plaintiff Jacob Shemper are barred by the economic loss doctrine applicable to Plaintiff's product liability claim against Cameron.  The product liability claim asserted by Plaintiff against Cameron arises from the use of Cameron equipment on the seabed of the Outer Continental Shelf, and is therefore governed by the federal Outer Continental Shelf Lands Act ("OCSLA").  Under OCSLA, federal law applies to the claim against Cameron, and federal law bars recovery of the economic losses that Plaintiff seeks to recover.

## KEY ALLEGATIONS IN THE COMPLAINT

For purposes of Cameron's motion, the following are the critical allegations in the Complaint.

The Complaint alleges an explosion and oil spill from the Deepwater Horizon mobile offshore drilling unit in the Gulf of Mexico, beginning on April 20, 2010.  (Compl. ¶¶ 1, 37.) The "sub-sea" oil well being drilled at the time of the casualty "was situated approximately 40 miles southeast of the Louisiana coast" in over "5,000 feet of water."  (*Id.)*

The Complaint alleges that the Plaintiff Shemper operates a fishing charter business that has suffered a "decline in business due to" the oil spill.  (Compl. ¶ 9.)  Plaintiff Shemper seeks to represent a class of similar businesses "that have sustained economic injuries and damages due to" the oil spill.  (Compl. ¶ 126.)

The Complaint alleges that the Transocean Defendants owned and operated the Deepwater Horizon.  (Compl. ¶¶ 20-24.)  The Complaint further alleges that BP Defendants and

Defendants Anadarko held a lease for the spilling oil well from the Minerals Management Service, "a federal entity" that leases oil and gas drilling rights in the Gulf of Mexico.  (Compl. ¶¶ 16, 19).

The Complaint alleges that Cameron manufactured and sold in 2001 a blowout preventer ("BOP") for the Deepwater Horizon.  (Compl. ¶¶ 30, 174.)   According to the Complaint, the "BOP is positioned atop the wellhead by attaching" a riser and placed "on the seafloor," and then "fastened to the wellhead" so that it is "properly positioned and secured."  (Compl. ¶¶ 47-49.)

The Complaint asserts causes of action against a set of Defendants called the "Drilling Defendants" for negligence, negligence per se, public nuisance, private nuisance, and abnormally dangerous activity for their alleged complicity in the fateful operation of the well.  (Compl. ¶¶ 55, 128-71, 185-95.)  Cameron is not one of the Drilling Defendants.  (Compl. ¶ 29.)

The Complaint asserts a single cause of action against Cameron for product liability. (Compl. ¶¶ 172-84.)

## ARGUMENT

The Outer Continental Shelf Lands Act ("OCSLA") requires the exclusive application of federal law to the claims against Cameron in this case.  In that context, OPA governs the claims for economic damages in this case, and OPA's comprehensive and exclusive claims payment system supplants any claims against Cameron for the damages sought in the Complaint.

In the alternative, Plaintiff's claims for economic loss against Cameron, which would otherwise arise under OCSLA, are barred by the "economic loss" rule under the federal law applicable by reason of OCSLA.

I.     **OCSLA Extends Federal Law to Govern Claims Involving the Cameron BOP in Operation**

OCSLA extends the "laws" and civil "jurisdiction of the United States" to the "subsoil and seabed of the outer Continental Shelf" and to "all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom," and so extends federal laws "to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State." 43 U.S.C. § 1333(a)(1). The allegations of Paragraphs 47-49 of the Complaint demonstrate that at the time of the alleged casualty, the Cameron BOP, the product at issue, was "attached to the seabed." OCSLA therefore extends federal law and exclusive federal jurisdiction to claims involving the Cameron product.

To the extent that OPA applies to the claims of Plaintiff Shemper, therefore, OCSLA expressly provides that OPA will govern any claim asserted with respect to the Cameron BOP.

II.    **The Complaint Should Be Dismissed Without Prejudice Because Plaintiffs' Claims Are Encompassed by the Comprehensive and Exclusive Claims Payment System of the Oil Pollution Act of 1990**

OPA establishes a comprehensive federal remedial scheme for the recovery of all damages of the types claimed by Plaintiff in the Complaint, providing an exclusive statutory procedure designed to provide full and complete recovery for all actual economic harm from designated "responsible parties." This statutory remedial scheme is exclusive; it precludes claimants from asserting rights to recover from other parties the specified categories of damages, particularly including the types of damages alleged in the Complaint. *See Gabarick v. Laurin Maritime (America) Inc.*, 623 F.Supp.2d 741 (E.D. La. 2009). Because Cameron is not a

responsible party under OPA, Plaintiff's claims are precluded. Accordingly, those claims should be dismissed without prejudice.

Importantly, dismissal of Plaintiff's purported claims against Cameron without prejudice will not impair Plaintiff's ability to recover for all actual economic harm. Full compensation remains available to Plaintiff under the strict liability and payment provisions of OPA itself.

### A. The Comprehensive and Exclusive Liability Scheme Enacted in OPA

The OPA system for oil spill liability and payment of claims is explicitly exclusive. OPA mandates that, "[*n*]*otwithstanding any other provision or rule of law*, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged" into "the navigable waters of the United States" is strictly "liable" to pay specified "damages." 33 U.S.C. § 2702(a) (emphasis added). This was not a slip of the Congressional pen. The legislative history makes clear that Congress consciously designed an exclusive liability and payment system. "It is important to note that following enactment, liability and ***compensation for oil pollution*** removal costs and ***damages*** caused by a discharge from a vessel or facility (as defined in this [bill]) ***will be determined in accordance with this [legislation]***." H.R. CONF. REP. NO. 101-653, 1990 U.S. CODE CONG. & ADM. NEWS ("1990 U.S.C.C.A.N.") 779, 802 ("CONF. REP."), repeating the language of S. REP. NO. 101-94, 1990 U.S.C.C.A.N. 722, 746-47 ("S. REP.") (emphasis added). OPA was meant "to create ***a single Federal law providing*** cleanup authority, penalties, and ***liability for oil pollution***." S. REP., 1990 U.S.C.C.A.N. at 730 (emphasis added).

As noted, OCSLA requires the application of OPA as federal law to matters involving the Cameron BOP in this case.  To the extent that OPA applies to the claims against Cameron, therefore, OPA should be applied as the exclusive, single federal law governing those claims.

Under OPA, the President is given the authority to designate the statutory "responsible party" strictly liable for removal costs and specified damages under the Act.  33 U.S.C. § 2714(a).  For vessels, the responsible party is any entity "owning or operating" the vessel.  33 U.S.C. § 2701(32)(A).  For offshore facilities on the outer Continental Shelf, the responsible party is any OCS "lessee or permittee." 33 U.S.C. § 2701(32)(C).  In this case it beyond dispute that the designated responsible parties are a BP entity defendant that was lessee/permittee of the offshore facility and a Transocean entity that was owner of the vessel.  It is likewise beyond dispute that Cameron is not a responsible party under OPA.

The strict liability of OPA § 2701 for specified damages explicitly applies to the lost revenue damage claims made by Plaintiff Shemper.   33 U.S.C. §§ 2702(b)(2)(B), (E).  The responsible parties' strict liability under OPA thus encompasses all damages claimed by Plaintiff Shemper in the Complaint.

In this context, the statute sets forth a *mandatory* procedure by which a damaged party is to invoke a responsible party's strict liability.  OPA explicitly states that "*all* claims for removal costs or damages *shall* be presented first to the responsible party."  33 U.S.C. § 2713(a) (emphasis added).  Only if the responsible party denies the claim or fails to settle it within 90 days may the claimant then sue "the responsible party or guarantor."  33 U.S.C. § 2713(c)(2).  Alternatively, under subsection 2713(c), the claimant may "present the claim to" the Oil Spill

Liability Trust Fund ("the Fund") established by 26 U.S.C. § 9509.  In that event, the Fund is required to pay any valid claim not paid by the responsible party.  33 U.S.C. § 2713(d).

The remaining remedial provisions of OPA plainly depend on the proper invocation of this claims presentment process which channels liability to designated responsible parties.  Any party incurring liability under OPA "may bring a civil action for contribution" in specified circumstances.  33 U.S.C. § 2709.  Such a contribution action may be brought within three years of (1) a judgment imposing liability under OPA or (2) entry of a judicially approved settlement with respect to costs or damages encompassed by OPA.  33 U.S.C. § 2717(f)(3)(A) and (B).  Furthermore, when a responsible party or the Fund pays a claim, the paying entity "shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law."  33 U.S.C. § 2715(a).  And the statute specifically addresses litigation of the subrogated claimants' rights, permitting commencement of such a subrogation claim by the paying party within three years of "the date of payment of such claim."  33 U.S.C. § 2717(f)(4).

By means of its strict liability structure and payment system, therefore, OPA expressly channels the rights of claimants into subrogation litigation to be brought (if at all) by the paying responsible party or the Fund after payment under OPA or litigation to judgment under OPA.  Once again, this approach was not inadvertent. Congress plainly understood that these provisions of OPA would dispense with traditional litigation over a claimant's rights or claims against other parties.  The pertinent Senate Report expressly noted that "***litigation*** or lengthy adjudicatory proceedings ***over liability***, defenses, ***or the propriety of claims should be reserved for subrogation actions*** against dischargers."   S. REP., 1990 U.S.C.C.A.N. at 732.  It is clear that Congress consciously designed an efficient remedial system, centralizing difficult litigation in a

few contribution or subrogation lawsuits – thereby avoiding potentially thousands of individual suits by claimants against third parties.

In conclusion, OPA establishes a streamlined procedure under which claimants present their claims and recover from the responsible parties or the Fund without having to prove fault. Any disputes over any ultimate liability of other parties are confined to litigation between those who paid the claims, *i.e.,* the responsible parties and/or the Fund, and any third parties who may be liable under traditional legal principles.  There is no need or reason for claimants, such as Plaintiff here, to sue third parties like Cameron directly, and OPA does not allow it.  Indeed, permitting such suits would subvert the statutory scheme and introduce unnecessary layers of complex litigation that Congress deliberately sought to avoid.

### B.  The OPA Remedies Foreclose Court Litigation Against Those Who Are Not Responsible Parties

The comprehensive and exclusive OPA remedies preclude any claim against any defendant that is not a responsible party designated pursuant to OPA.  That is the precise holding in the *Gabarick* case cited above.

In that case, the defendants argued that OPA pre-empted all claims for damages encompassed by OPA section 2702(b).  The plaintiffs argued against statutory preemption, in part relying upon a savings clause in OPA which provides that "[e]xcept as otherwise provided in this Act, this Act does not affect (1) admiralty and maritime law . . ." 33 U.S.C. § 2751(e). But as Judge Lemelle explained in rejecting that argument, this clause simply means, as its literal language indicates, that the OPA "does not affect admiralty and maritime law ***except as provided in the Act***."  *Gabarick*, 623 F.Supp.2d at 746 (emphasis added).  Because the Act does in fact impose strict liability for specific types of damages, require presentment of claims for those

damages, and prescribe who can be sued and when, it necessarily affects admiralty and maritime law in those respects; "the plain language of the statute indicates its mandatory and exclusive nature with respect to its covered damages." *Id.*

The conclusion in *Gabarick* was solidly grounded in Supreme Court precedent interpreting the preclusive effect of other similarly comprehensive statutory remedial schemes. When Congress enacts a comprehensive remedial statute such as the OPA, the new federal remedies replace pre-existing common law or maritime causes of action; "the underlying legal basis" for such causes of action are "pre-empted by [the new federal] statute." *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 22 (1981).  As Judge Lemelle further explained in *Gabarick*,

> When considering an issue similar to the one *sub judice*, the Supreme Court recognized the preemption of Federal Common Law and General Maritime Law by Congress's comprehensive legislation in the area of water pollution. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1 (1981). In finding that the Federal Water Pollution Control Act preempted federal common law of nuisance in the area of ocean pollution, the Court stated, "In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate. *Id.* at 15.  . . . . OPA explicitly states the damages to which it applies and the remedy to be pursued.  The courts are to recognize this direct answer of Congress rather than seek to subvert it by allowing pursuit of the types of claims covered by OPA under the general maritime law . . . .

623 F.Supp.2d at 747.  *See also, e.g., Milwaukee v. Illinois*, 451 U.S. 304, 317 (1981) (Congress "occupied the field" by enacting the Clean Water Act).

As recognized in *Gabarick*, congressional intent furnishes "the ultimate touchstone in every pre-emption case."  623 F. Supp. 2d at 750 (quoting *Altria Group, Inc. v. Good*, 129 S.Ct. 538, 543 (2008)).  Here, the intent of Congress, "articulated in both the express language of the statute and the legislative history, was to encourage settlement and reduce litigation in oil spill

cases through the enactment of comprehensive federal legislation." *Gabarick*, 623 F.Supp.2d at 750. As the Senate Report makes clear, the OPA was expressly intended to "create a ***single Federal law providing*** cleanup authority, penalties, and ***liability for oil pollution***." Accordingly, Judge Lemelle in *Gabarick* held that "[i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA, . . . Claimants should pursue claims covered under OPA ***only against the responsible party and in accordance with the procedures established by OPA***." 623 F.Supp.2d at 750 (emphasis added). As asserted against a defendant *not* designated a responsible party, therefore, Judge Lemelle dismissed "all claims covered under 33 U.S.C. § 2702." 623 F.Supp.2d at 751. In recognition of the statutory mechanism converting the claimants' rights and claims into potential subrogation and contribution claims to be asserted by the responsible parties, the dismissal was entered without prejudice. *Id.*

### C.   OPA Precludes Plaintiffs' Assertion of Claims Against Cameron

Plaintiff Shemper clearly has not satisfied the statutory presentment requirement. When he filed suit, ninety days had not passed since the casualty. Once Plaintiff has satisfied that presentment requirement and if his claims are not paid, then he like other claimants may invoke OPA and will need only to demonstrate actual economic loss in order to recover from the responsible parties. Alternatively, he can seek recovery from the Fund.

Plaintiff Shemper alleges that he has suffered economic damages, not that he has incurred liability or paid claims for which he might be entitled to be reimbursed under OPA. He has therefore asserted no claim for contribution under 33 U.S.C. § 2709, or for a subrogated claim under 33 U.S.C. § 2715(a). Instead, the damage claims for lost business revenue that he asserts are unambiguously encompassed by the damage categories specified in 33 U.S.C. § 2702(b).

The necessary conclusion in this case, therefore, is the same as in *Gabarick*: "In light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA, . . . Claimants should pursue claims covered under OPA *only against the responsible party and in accordance with the procedures established by OPA*." In short, Plaintiff Shemper remains free to pursue his statutory remedy under OPA, so long as he complies with the mandatory claims presentment procedure. But his Complaint for economic damage claims asserted against Cameron is not permitted by OPA and should be dismissed (without prejudice to the potential rights of the responsible parties) because Cameron is not a "responsible party".

## III.   The Complaint Should Be Dismissed for Failure to State a Claim Under OCSLA

If OPA were somehow deemed not to supplant all other federal law, despite OPA's clear language and the holding in *Gabarick*, then OCSLA would necessarily require application of some other federal law – and federal law would bar Plaintiff's claims in any event. The U.S. Supreme Court has held as a matter of federal law that economic losses like those asserted by Shemper are not recoverable. *See East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 876 (1986). On the basis of the "economic loss" doctrine, therefore, the Complaint should be dismissed as against Cameron for failure to state a claim upon which relief can be granted against Cameron.

## IV.   Conclusion

Under OPA, Plaintiff's claims against Cameron should be dismissed without prejudice. Under OCSLA, Plaintiff's claims against Cameron should be dismissed with prejudice.

Respectfully submitted this 20th day of July, 2010.

CAMERON INTERNATIONAL CORPORATION

by:     *s/ Robert C. Galloway*
        Robert C. Galloway

ROBERT C. GALLOWAY, MB No. 4388
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
P. O. Drawer 4248
Gulfport, MS  39502
Telephone:  (228) 864-1170
Fax:  (228)868-1531
E-mail:  bob.galloway@butlersnow.com

## <u>CERTIFICATE OF SERVICE</u>

I, Robert C. Galloway, one of the attorneys for Cameron International Corporation, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following, via e-mail:

Michael Jacob Shemper, Esq.
Michael J. Shemper, PLLC
P. O. Box 1727
Hattiesburg, MS  39403-1727
**Counsel for Plaintiff**

Joseph F. Rice, Esq.
Kevin R. Dean, Esq.
Ronald L. Motley, Esq.
Motley Rice, LLC
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
**Pro Hac Vice Counsel for Plaintiff**

Jason D. Watkins, Esq.
Forman, Perry, Watkins
  Krutz & Tardy, LLP
P. O. Box 22608
Jackson, MS  39225-2608
**Counsel for BP America, Inc.; BP Products North America, Inc.;**
**BP America Production Company; BP Exploration & Production, Inc.**

W. Wayne Drinkwater, Jr., Esq.
Jack L. Wilson, Esq.
Bradley Arant Boult Cummings, LLP
P. O. Box 1789
Jackson, MS  39215-1789
**Counsel for Anadarko Petroleum Corporation; MOEX Offshore 2007, LLC**

Richard P. Salloum, Esq.
Franke & Salloum, PLLC
P. O. Drawer 460
Gulfport, MS  39502
**Counsel for Transocean Deepwater, Inc.; Transocean Holdings, LLC**
**Transocean Offshore Deepwater Drilling, Inc.; Triton Asset Leasing, GmbH**

David W. Stewart, Esq.
Copeland, Cook, Taylor & Bush, PA
P. O. Box 10
Gulfport, MS  39502-0010
**Counsel for Halliburton Energy Services, Inc.**

Charles Greg Copeland, Esq.
Copeland, Cook, Taylor & Bush, PA
P. O. Box 6020
Ridgeland, MS  39158-6020
**Counsel for Halliburton Energy Services, Inc.**

Donald E. Godwin, Esq.
Bruce W. Bowman, Jr., Esq.
Jenny L. Martinez, Esq.
Godwin Ronquillo, PC
1201 Elm, Suite 1700
Dallas, TX  75270
**Pro Hac Vice Counsel for Halliburton Energy Services, Inc.**

R. Alan York, Esq.
Godwin Ronquillo, PC
1331 Lamar, Suite 1665
Houston, TX  77010
**Pro Hac Vice Counsel for Halliburton Energy Services, Inc.**

G. Todd Burwell, Esq.
G. Todd Burwell, PA
618 Crescent Blvd., Ste. 200
Ridgeland, MS  39157
**Counsel for M-I, LLC**

This the 20th day of July, 2010.

*s/ Robert C. Galloway*
Robert C. Galloway

Gulfport 464584