# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

| | |
|---|---|
| JACOB R. SHEMPER, ) <br> ) <br>    *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> BP, PLC., *et. al.*, ) <br> ) <br>    *Defendants*. ) <br> ) <br> ) | Case No. 2:10cv138-KS-MTD <br><br> <u>Oral Argument Requested</u> |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS ANADARKO PETROLEUM CORPORATION AND MOEX OFFSHORE 2007 LLC TO DISMISS COMPLAINT PURSUANT TO FED R. CIV. P. 12(b)(6)

Attorneys for Anadarko Petroleum
Corporation and MOEX Offshore 2007
LLC

W. Wayne Drinkwater, Jr.
BRADLEY ARANT BOULT
CUMMINGS LLP − Jackson
P.O. Box 1789
Jackson, MS 39215−1789
601/948−8000
Fax: 601/948−3000
Email: wdrinkwater@babc.com

Jack L. Wilson
BRADLEY ARANT BOULT
CUMMINGS LLP − Jackson
P.O. Box 1789
Jackson, MS 39215−1789
601/592−9910
Fax: 601/592−1410
Email: jwilson@babc.com

A/73414722.2

TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... 1

II. MOTION TO DISMISS STANDARD.................................................................... 2

III. FACTUAL ALLEGATIONS IN THE COMPLAINT ........................................... 2

IV. ARGUMENT........................................................................................................... 3

THE COMPLAINT SHOULD BE DISMISSED
BECAUSE EACH OF THE COUNTS AGAINST APC AND MOEX
FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

A. Plaintiff's Claims Should Be Dismissed Because Plaintiff Pleads No
Nonconclusory Allegation of Wrongful Conduct By APC or MOEX ................. 3

1. The Complaint fails to allege any plausible, nonconclusory basis
for APC or MOEX's purported direct liability ........................................... 4

2. The Complaint also fails to allege any plausible, nonconclusory
basis for APC and MOEX's purported indirect liability ............................ 5

B. The Economic Loss Rule Bars All Of Plaintiff's Claims Against APC And
MOEX ..................................................................................................................... 8

C. Count II Fails To State A Claim Of Negligence Per Se Because Plaintiff
Does Not Identify The Specific Statute Allegedly Violated And Because
Plaintiff Failed To Exhaust State Administrative Remedies ............................... 10

D. Count III Fails To State A Claim For Private Nuisance ..................................... 12

E. Count IV Fails To State A Claim For Public Nuisance ....................................... 13

F. Count VI Fails To State A Claim For Strict Liability For Ultrahazardous
Activities ............................................................................................................... 14

V. CONCLUSION....................................................................................................... 15

# I.
# INTRODUCTION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Anadarko Petroleum Corporation ("APC") and MOEX Offshore 2007 LLC ("MOEX") have moved to dismiss Counts I, II, III, IV, and VI of Plaintiff's Complaint, which are all the claims that Plaintiff has brought against them.[1]

First, the Complaint should be dismissed for failure to state a claim upon which relief can be granted because Plaintiff pleads no nonconclusory allegations from which one could plausibly infer that APC or MOEX had actual operational involvement in the *Deepwater Horizon* drilling operation for which they could be directly liable for any tortious conduct that occurred on board. Furthermore, Plaintiff fails to plead any plausible nonconclusory basis for holding APC and MOEX indirectly liable for the alleged tortious conduct.

Second, all of Plaintiff's claims against APC and MOEX are barred by the economic loss rule, because Plaintiff fails to allege physical damage to his person or to any property in which he has a proprietary interest.

Third, Count II fails to state a claim of negligence *per se* because Plaintiff does not identify any specific statute that has allegedly been violated. Furthermore, even if Plaintiff had identified a particular statute or regulation, Plaintiff's claim should be dismissed because Plaintiff failed to exhaust state administrative remedies.

Fourth, Count III fails to state a cognizable claim for private nuisance, because Plaintiff does not allege that he has a real property interest in the "inland waters and inshore fisheries of

---

[1] Plaintiff brings his Fifth Claim for "Strict Liability for Product Defect" solely against defendant Cameron International Corporation. Compl. ¶¶ 172-184.

1

the coastal zone, Gulf of Mexico and Gulf Coast States."

Fifth, Count IV fails to state a cognizable claim for public nuisance, because Plaintiff fails to allege that the harm he has allegedly suffered differs substantially from the harm suffered by the public at large.

Finally, Count VI fails to state a claim for strict liability, because oil and gas operations are not abnormally dangerous activities as a matter of settled Mississippi law.

## II.
## MOTION TO DISMISS STANDARD

The framework for resolving a Rule 12(b)(6) motion to dismiss is familiar and straightforward. The Court begins by ignoring "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth;" taking only the plaintiff's well-pleaded allegations, the Court assumes "their veracity and then determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Ultimately, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir. 2007), the claim should be dismissed. Under this standard, Plaintiff's claims against APC and MOEX should be dismissed.

## III.
## FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiff alleges that the *Deepwater Horizon* was an ultra-deepwater, dynamically positioned semi-submersible oil drilling rig, owned by Defendant Transocean and leased to Defendant BP. Compl. ¶ 33. Defendant BP leased the *Deepwater Horizon* in order to drill exploratory wells at the Macondo prospect site on the outer continental shelf in the Gulf of

Mexico. Compl. ¶ 36. According to Plaintiff, Defendants BP, APC, and MOEX were the "holder[s]" of the lease. Compl. ¶ 16. Plaintiff alleges that Defendant APC "owns a 25% stake in the Macondo prospect lease and that MOEX "holds a 10% stake." Compl. ¶¶ 17, 18.

On or about April 20, 2010, explosions occurred on the *Deepwater Horizon*, causing the rig to list, then sink to the ocean floor. Compl. ¶ 89. After the explosion and sinking of the rig, oil began to discharge into the Gulf of Mexico. Compl. ¶ 91. According to Plaintiff, at the time of the explosion, Defendant BP was operating the *Deepwater Horizon*, Compl. ¶ 16, and Defendant Transocean "was operating, participating in, and providing employees, equipment, and operational support for drilling related activities at the off-shore site of the *Deepwater Horizon*, as well as onshore activities and support." Compl. ¶ 25.

Plaintiff alleges that he is a "for hire" provider of charter fishing and guide services in the coastal zones and waters of the Gulf of Mexico, a business that depends on access to the waters and fisheries of the coastal zones. Compl. ¶ 9. According to the Complaint, because of the oil spill, Plaintiff has begun "to suffer cancellations of previously scheduled fishing excursions, and faces a continuing decline in business… ." Compl. ¶ 9. Plaintiff does not allege that he has been physically injured by the spill, or that he owns property impacted or damaged by the spill.

## IV.
## ARGUMENT

### THE COMPLAINT SHOULD BE DISMISSED
### BECAUSE EACH OF THE COUNTS AGAINST APC AND MOEX
### FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

**A.  Plaintiff's Claims Should Be Dismissed Because Plaintiff Pleads No Nonconclusory Allegation of Wrongful Conduct By APC or MOEX.**

Plaintiff's allegations as a whole are insufficient to state a claim for relief against APC and MOEX. A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct.

3

1937, 1949 (2009).  The factual matter in a complaint must leave the impression that the defendant's liability is plausible.  The "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely *consistent with* a defendant's liability," it fails to state a plausible claim for relief, and should be dismissed.  *Twombly*, 550 U.S. at 557 (emphasis added).  A fundamental "working principle[]" animates the plausibility standard:  a plaintiff cannot rest on "mere conclusory statements," *i.e.*, "a legal conclusion couched as a factual allegation."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

> 1. **The Complaint fails to allege any plausible, nonconclusory basis for APC or MOEX's purported direct liability.**

Plaintiff's only allegations as to APC and MOEX's direct involvement in the *Deepwater Horizon* drilling operation are entirely conclusory, unsupported by any allegations of fact that could support a finding of liability against them.  The only truly factual, nonconclusory allegations in the Complaint with respect to APC and MOEX are that each owns a minority interest in the Minerals Management Service lease that permits defendant BP to explore for oil in the Macondo Prospect. Compl. ¶¶ 17, 18.

Thus, Plaintiff's claims against APC and MOEX are based solely on their minority interests in the minerals lease.  But an interest in a minerals lease, by itself, does not plausibly lead to even an inference that APC and MOEX actually operated the *Deepwater Horizon* rig (in which APC and MOEX are not alleged to, and do not, have any interest at all) or any other part of the drilling or the well. *See* Compl. ¶ 34 ("At times relevant herein, the *Deepwater Horizon* was owned by Transocean but leased to Defendant BP for a term continuing through September 2013). With respect to every other factual allegation in the Complaint relevant to MOEX and APC, Plaintiff indiscriminately "lumps" defendants together as the "Drilling Defendants" as if

4

they constitute a single entity, without alleging any factual basis for doing so. *See, e.g.,* Compl. ¶ 29 ("Defendants' BP, Anadarko, MOEX, Transcoean, Halliburton, M-1 and Weatherford are collectively referred to herein as the "Drilling Defendants"); Compl. ¶ 37 (As a mobile offshore drilling unit, the *Deepwater Horizon* was utilized by the Drilling Defendants…); Compl. ¶ 95 ("The Drilling Defendants knew or should have known… ."); Compl. ¶ 141 ("One or more of the Drilling Defendants were in violation… ."); Compl. ¶ 157 ("One or more of the Drilling Defendants had actual and/or constructive knowledge … .").

In sum, there is no plausible, nonconclusory allegation that APC and MOEX actually participated in the allegedly negligent drilling operations. The Complaint, therefore, provides no basis on which APC or MOEX could be found directly liable. *Iqbal*, 129 S. Ct. at 1949.

### 2. The Complaint also fails to allege any plausible, nonconclusory basis for APC and MOEX's purported indirect liability.

Because Plaintiff fails to allege any conduct on the part of MOEX and APC that would give rise to liability, Plaintiff resorts to asserting that "one or more of the Drilling Defendants are jointly and severally liable" for the alleged tortious conduct. Compl. ¶ 36; *see also* Compl. at 41. Plaintiff also conclusorily alleges that at "all times material hereto the *Deepwater Horizon* was owned, navigated, manned, possessed, managed, controlled, chartered *and/or* operated by Defendants BP, Transocean, Anadarko *and/or* MOEX." Compl. ¶ 130 (emphasis added). Plaintiff also pleads: "As part of its agreement with Defendant BP, Defendant Transocean provided employees, contractors and other officials who assisted Defendants BP, Anadarko, and MOEX in their oil exploration and production activities at the Macondo Prospect." Compl. ¶ 36. But these too are mere conclusions dressed up as factual allegations. *Iqbal*, 129 S. Ct. at 1949. Plaintiff fails to allege any facts that might support his hoped-for conclusion that APC and

5

MOEX were engaged in a joint-venture that would make them jointly and severally liable for the other defendants' purported negligence.

Plaintiff at no point alleges any facts that might establish that APC or MOEX had any ownership, management role, or operational role whatsoever in the *Deepwater Horizon*. For example, Plaintiff does not allege that there were APC or MOEX employees or contractors on board the *Deepwater Horizon*. Nor does Plaintiff allege that APC or MOEX had an agreement with BP or Transocean which might have given them responsibility for or control over the operation of the *Deepwater Horizon* rig or any other aspect of the drilling operations. By contrast, Plaintiff specifically alleges that BP operated the *Deepwater Horizon* on the day of the explosion, Compl. ¶ 16, and that Transocean was "operating, participating in, and providing employees, equipment, and operational support for drilling-related activities at the off-shore site of the *Deepwater Horizon*, as well as onshore activities and support at all times relevant to the Oil Spill." Compl. ¶ 25.

In *Hults v. Tillman*, 480 So.2d 1134 (Miss. 1985), the Mississippi Supreme Court explained the law in Mississippi on joint ventures, as was originally established in the case of *Sample v. Romine*, 8 So.2d 257, *modified*, 10 So.2d 346 (1942):

> We broadly defined a joint venture as an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, efforts, skill and knowledge. We said it exists when two or more persons combine in a joint business enterprise for their mutual benefit with an understanding that they are to share in profits or losses and each to have voice in its management. <u>We noted a condition precedent for its existence was a joint proprietary interest and right of mutual control</u>.

*Hults*, 480 So.2d at 1142. (emphasis supplied).

Of the elements of a joint venture, equal right to control the operation is paramount, because as a matter of Mississippi law a non-operating partner of a mining venture cannot be

6

liable for the negligence of the operating partner, absent equal authority of the non-operating partner to control the enterprise. *Pittman v. Weber Energy Corp.*, 790 So.2d 823, 828 (Miss. 2001); *Bolivar v. R&H Oil and Gas Co.*, 789 F. Supp. 1374, 1379-80 (S.D. Miss. 1991); *see also James v. Nico Energy Corp.*, 838 F.2d 1365, 1373 (5th Cir. 1988) (no joint venture where one party's involvement in wells was limited to investment of capital and another party had sole right of control in drilling and operating of wells); *Blocker Exploration Co. v. Frontier Exploration, Inc.*, 740 P.2d 983, 988 (Colo. 1987) (no joint venture where non-operating owner merely invested funds and there was no right of participation in management and control of operation); *Archer v. Bill Pearl Drilling Co., Inc.*, 655 S.W.2d 338, 344 (Tex. App. 1983) (no joint venture in negligence action as a matter of law where co-owner merely invested in venture but exercised no right to participate in control or operation of drill site); *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex. 1981) (no joint venture where defendants merely invested by paying costs of drilling well but did not participate in actual drilling, operation and control of the well); *Transcontinental Gas Pipe Line Corp. v. Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968) (oil company could not recover from non-operators where operator, but not non-operators, was negligent), *rev'd on other grounds*, 424 F.2d 684 (5th Cir. 1970), *cert. denied*, 400 U.S. 832 (1970). Because Plaintiff fails to make any allegation that APC or MOEX had authority to exercise control over the operations at issue, there is no plausible basis on which APC or MOEX could be found indirectly or vicariously liable for the tortious conduct that is alleged in the Complaint.

    In sum, Plaintiff has adduced no factual allegation which, even if proven, would result in APC or MOEX being found directly or indirectly liable for the alleged torts. Consequently, the Complaint should be dismissed with respect to APC and MOEX. *Tuley v. Heyd*, 482 F.2d 590,

594 (5th Cir. 1973) (remanding for dismissal of complaint because "pleading … fails to indicate any direct, personal involvement of either defendant … [and] also fails to allege any arguable basis for vicarious liability").

B.     **The Economic Loss Rule Bars All Of Plaintiff's Claims Against APC And MOEX.**

Plaintiff's claims also fail under the economic loss rule.  Plaintiff, an inshore, for-hire fishing guide, has not alleged that he has suffered a physical injury or damage to any proprietary interest.  Instead, all of the claims Plaintiff asserts against APC and MOEX seek recovery only for economic losses he has allegedly indirectly suffered because the *Deepwater Horizon* oil spill has damaged the marine, coastal, and estuarine environments where Plaintiff earns his livelihood.  Compl. ¶¶ 111- 118.  The legal bases for those claims are not entirely clear.  For instance, while Plaintiff brings his negligence *per se* claim under Mississippi law, Compl. ¶ 147, his negligence claim is not tied to either state law or federal maritime law.[2]  But in the end, the bases for Plaintiff's claims do not matter.  Under federal maritime law and Mississippi law (to the extent it applies), Plaintiff's claims all fail as a matter of law because he seeks damages only for economic losses resulting from his alleged loss of business.  "Courts nationwide have traditionally concluded that a plaintiff who suffers only financial loss, unaccompanied by personal or property injury, cannot recover damages for most forms of negligence."  Robert A. Weems and Robert M. Weems, MISSISSIPPI LAW OF TORTS § 18:26 (2009).  Under this so-called economic loss rule, the Court should dismiss all of Plaintiff's claims.

Insofar as Plaintiff's claims are based on federal maritime law, Fifth Circuit precedents

---

[2]     It is clear that Plaintiff's claims are not brought under the federal Oil Pollution Act, 33 U.S.C. §§ 2701 *et seq.*, which is nowhere mentioned in the Complaint.  While respectfully reserving their position on the choice-of-law issue, Defendants assume, *arguendo*, and solely for purposes of this motion, that federal maritime or Mississippi state law applies to Plaintiff's claims, as Plaintiff apparently assumes.

compel the claims' dismissal: "It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit." *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006) (citing *Robins Dry Dock & Repair v. Flint*, 275 U.S. 303, 309 (1927) and *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1023 (5th Cir. 1985)). *See also Kingston Shipping Co., Inc. v. Roberts*, 667 F.2d 34 (11th Cir. 1982) ("[A] party may not recover for economic losses not associated with physical damages."); *Dunham-Price Group, LLC v. CITGO Petroleum Corp.*, No. 2:07 CV 1019, 2010 WL 11285446, at *3 (W.D. La, Mar. 31, 2010) (denying plaintiffs' state law claims for economic losses resulting from negligence under *Robins* rule).

Moreover, under binding Fifth Circuit precedent, Plaintiff cannot resort to state law to circumvent the economic loss rule applicable to maritime torts. Depending on the circumstances, federal maritime law may, or may not, preempt state-law remedies through what is sometimes called the "reverse *Erie*" doctrine. *See Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222-223 (1986). While some courts have held that plaintiffs can bring state-law claims to recover economic losses that they cannot recover under federal maritime law, *see, e.g.*, *In re The Exxon Valdez*, 270 F.3d 1215, 1250-1253 (9th Cir. 2001), the Fifth Circuit has reached the opposite conclusion. Recognizing that "[m]aritime law specifically denies recovery to non proprietors for economic damages," the Fifth Circuit holds that "[t]o allow state law to supply a remedy when one is denied in admiralty would serve only to circumvent the maritime law's jurisdiction." *IMTT-Gretna v. Robert E. Lee SS*, 993 F.2d 1193, 1195 (5th Cir. 1993), *supplemented by* 999 F.2d 105 (5th Cir. 1993). *See also In re Taira Lynn Marine*, 444 F.3d 371 at 380 (reaffirming that, according to *IMTT-Gretna*, plaintiffs seeking only damages for economic losses arising out of a maritime incident "may not recover under state law"). In other

9

words, federal law is Plaintiff's only recourse, and it denies him the precise remedy he seeks.

Even if it applied, Mississippi law would be of no help to Plaintiff.[3] This Court has consistently held that tort claims alleging purely economic losses are "not viable under Mississippi law." *Progressive Ins. Co. v. Monaco Coach Corp.*, No. 1:05 CV 37 DMR JMR, 2006 WL 839520, at *2 (S.D. Miss., Mar. 29, 2006); *see Adcock v. South Austin Marine,Inc.*, Civil Action No. 2:08cv263KS-MTP, 2009 WL 3633335, at * 5 (S.D. Miss. 2009) ("There has been no case cited and the court has been unable to find any which allows a cause of action for only economic damages to proceed as a tort in purely negligence without personal injury or property damage."); *East Mississippi Elec. Power Ass'n v. Porcelain Products Co.*, 729 F. Supp. 512, 517 (S.D. Miss. 1990) ("The court, though, finds it unlikely that the Mississippi Supreme Court would decide to join the 'steadily dwindling minority of jurisdictions that permit tort-based actions for economic loss.'").

Accordingly, whether under federal maritime law or Mississippi common law, Plaintiff's tort claims are barred under the "economic loss rule," and this Court should grant Defendants' motion to dismiss.

**C.    Count II Fails To State A Claim Of Negligence *Per Se* Because Plaintiff Does Not Identify The Specific Statute Allegedly Violated And Because Plaintiff Failed To Exhaust State Administrative Remedies.**

Plaintiff's claim for negligence *per se* under Mississippi law fails because Plaintiff makes only a general allegation that the defendants violated "numerous state and federal laws, and permits issued under the authority of these laws."  Compl. ¶¶ 146, 147.  One element of negligence *per se* under Mississippi law is the violation of a specific statute or regulation.

---

[3]    Defendants respectfully reserve the right to argue that federal law solely provides the rules of decision in this case, or that the law of another state properly should be applied under a choice of law analysis, pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331 *et seq*.

*Donald v. Amoco Production Co.*, 735 So. 2d 161, 176 (Miss. 1999).  In order to adequately plead a negligence *per se* claim in federal court, a plaintiff must identify the specific statute or regulation he believes has been breached to give defendant sufficient notice of the claim to formulate a response.  *See Anchundia v. Northeast Utilities Serv. Co.*, No. CV 07-4446(AKT), 2010 WL 2400154, at *5 (E.D.N.Y., June 11, 2010) ("Where plaintiff fails to identify the statute upon which the [negligence *per se*] claim is based, it is impossible to determine if the plaintiff was in a class sought to be protected by the statute or whether the injury suffered by the plaintiff was the type of injury the statute was designed to prevent.  It is also impossible to assess whether the defendant breached a duty imposed by statute."); *Holler v. Cinemark USA, Inc.*, 185 F. Supp.2d 1242, 1243-44 (D. Kan. 2002) ("Notice pleading requirements suggest that plaintiff must plead the specific statute on which he bases his claim for negligence *per se*.").  Thus, in *Gates v. W.R. Grace & Co.*, No. 8:08-cv-2560-T-27TBM, 2009 WL 1455316 (M.D. Fla., May 21, 2009), when the plaintiffs' negligence *per se* claim alleged only that the defendants "violated various Federal, state and local environmental laws and regulations," the court dismissed the claim for failing to give fair notice of the claim's grounds.  *Id.* at *3.  Here, Plaintiff has pleaded negligence *per se* with the same impermissible degree of vagueness.  Accordingly, Count III should be dismissed.

  Even if Plaintiff had identified the specific state laws Defendants allegedly breached, Plaintiff's claim still would fail because Plaintiff has not alleged that he exhausted state administrative remedies.  A plaintiff claiming negligence *per se* due to violation of Mississippi oil and gas laws and regulations is required to "exhaust the administrative remedies available to him before resorting to the courts for resolution of his dispute" because "the State Oil and Gas Board … has jurisdiction and authority over all persons and property necessary to enforce its

regulations." *Amoco Prod. Co.*, 735 So. 2d, at 176 (*citing* Miss. Code Ann. § 53-1-17 (Supp. 1998)). That exhaustion requirement cannot be end-run in federal court; indeed, the Fifth Circuit has many times affirmed the dismissal of state-law claims for failure to exhaust mandatory state administrative remedies. *See, e.g., Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 471 (5th Cir. 2004); *cf. Melder v. AllState Corp.*, 404 F.3d 328, 332-33 (5th Cir. 2005) (affirming remand of state claims). As in *Amoco*, Plaintiff here has not alleged that he exhausted mandatory Mississippi administrative remedies, nor has he alleged circumstances justifying an exception to the exhaustion requirement. Plaintiff's negligence *per se* claim thus should be dismissed for this reason as well.

**D.    Count III Fails To State A Claim For Private Nuisance.**

Plaintiff's private nuisance claim should be dismissed because Plaintiff has not alleged that he has a real property interest in the "inland waters and inshore fisheries of the coastal zone, Gulf of Mexico and Gulf Cost States." Compl. ¶ 9. A private nuisance is "an invasion of another's interest in the private use and enjoyment of land." *Comet Delta, Inc. v. Pate Stevedore Co.*, 521 So. 2d 857, 860 (Miss. 1988). To state a claim of private nuisance, the plaintiff must allege a leasehold or some other real property interest in the land that is subject to the claim. *Id.* at 860.

Plaintiff alleges that he has "legitimate interests . . . as well an interest in using and enjoying the inland waters, as well as inshore fisheries of the costal zone, Gulf of Mexico and Gulf Coast States as locations to conduct their 'for hire' charter fishing and guide service businesses." Compl. ¶ 152. As clarified by the Complaint's other allegations, those "interests" arise only from the fact that Plaintiff conducts his business in the "waters and fisheries of the coastal zones and the Gulf of Mexico," not because he has a leasehold or other real property interest in the damaged waters and fisheries. Compl. ¶ 9. Plaintiff lacks the necessary real

12

property interest in the private use and enjoyment of these lands and therefore fails to state a claim for private nuisance. Accordingly, Plaintiff's private nuisance claim should be dismissed.

**E.     Count IV Fails To State A Claim For Public Nuisance.**

Plaintiff's claim for public nuisance should be dismissed because Plaintiff has not alleged that the harm he has suffered differs substantially from the harm suffered by the public at large.[4] "A public nuisance is an unreasonable interference with a right common to the general public," such as interfering with public health, safety, or convenience. *Comet Delta*, 521 So. 2d at 860, 861. To recover damages for a public nuisance, a plaintiff "must have sustained harm different in kind, rather than degree, than that suffered by the public at large." *Id.* at 861.

Plaintiff conclusorily alleges that "[o]ne or more of the Drilling Defendants has unreasonably interfered with and invaded the public's right in utilizing and maintaining the waters, coastline, natural resources, estuaries, flora and fauna of the Gulf of Mexico in a condition free from toxic pollution . . . ." Compl. ¶ 164. Plaintiff's alleged damages are no different from those of the general public; he, like the public at large, is allegedly unable to use the waters affected by the oil spill. *Compare Prescott v. Leaf River Products*, 740 So. 2d 301, 305 (Miss. 1999) (granting summary judgment on a public nuisance claim where the plaintiffs could not show that discoloration of a river affected their personal property or that the loss of use of the river was a substantially differentiated harm). The only potential difference is that Plaintiff allegedly suffered greater economic losses than the general public. Compl. ¶ 9. But that difference is not, as it must be, a qualitatively "individualized harm" — Plaintiff, for instance, has not alleged that he has a greater right to use the water than the public at large. Instead, that

---

[4]     General federal maritime law does not recognize public nuisance claims and therefore Plaintiff's public nuisance claim fails under maritime law. *See, e.g., Louisiana ex rel. Guste v. M/V TESTBANK,* 752 F.2d 1019, 1032, n. 13. (5th Cir. 1985). Accordingly, Defendants address whether the nuisance claims are viable under Mississippi law, assuming solely for purposes of this Motion that Mississippi law might apply.

13

difference shows only that Plaintiff's damages may be quantitatively greater than the public's, *Comet Delta*, 521 So. 2d at 861, and so cannot save his public nuisance claim from being dismissed.

### F. Count VI Fails To State A Claim For Strict Liability For Ultrahazardous Activities.

Mississippi recognizes strict liability for ultrahazardous and abnormally dangerous activities only for activities related to storing or using explosives in populated areas. *Donald v. Amoco Production Co.*, 735 So. 2d 161, 171 (Miss. 1999); *Lewis v. Kinder Morgan Southeast Terminals, LLC*, Civil Action Nos. 2:07cv47KS-MTP, 2:07cv48KS-MTP, 2008 WL 3540174, at * 10 (S.D. Miss., Aug. 6, 2008); *Bolivar v. R & H Oil and Gas Co., Inc.*, 789 F. Supp. 1374, 1383 (S.D. Miss. 1991). This Court has held that oil and gas operations are not abnormally dangerous activities under Mississippi law, notwithstanding that oil and gas may be explosive. *Bolivar*, 789 F. Supp. at 1382-83; *Lewis*, 2008 WL 3540174, at *10. The Court so held because, "the Mississippi court has adopted the rule of absolute or strict liability for damage caused to adjoining property by one who stores or explodes dynamite or other dangerous explosives on his land … [b]ut its adoption of that rule has not been extended beyond that circumstance and the Mississippi authorities have uniformly required proof of negligence against the operator of an oil or gas well as a prerequisite to the imposition of liability for damages caused to the property." *Bolivar*, 789 F. Supp. at 1382-83 (internal citations omitted). As the Court rightly concluded in *Bolivar*, Plaintiff's claim for strict liability for abnormally dangerous and ultrahazardous activity relating to the defendants' oil and gas explorations are, as a matter of law, unavailable and should be dismissed.

# V.
# CONCLUSION

For the foregoing reasons, all the claims asserted in the Complaint against Anadarko and MOEX should be dismissed in their entirety.

                                      Respectfully submitted,

                                      s/Jack L. Wilson
W. Wayne Drinkwater (Miss. Bar No. 6193)
wdrinkwater@babc.com
Jack L. Wilson (Miss. Bar No. 101482)
jwilson@babc.com
Bradley Arant Boult Cummings LLP
One Jackson Place, Suite 400
Jackson, MS 39201
188 East Capitol Street
PO Box 1789
Jackson, MS 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000

*Attorneys for Anadarko Petroleum Corporation and MOEX Offshore 2007 LLC*

Of Counsel:

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen
355 South Grand Avenue
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Bingham McCutchen
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
July 20, 2010                                  Facsimile (202) 373-6001

## **CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

THIS, the 20th day of July, 2010.

        s/Jack L. Wilson
        Jack L. Wilson (Miss. Bar No. 101482)
        jwilson@babc.com
        Bradley Arant Boult Cummings LLP
        One Jackson Place, Suite 400
        Jackson, MS 39201
        188 East Capitol Street
        PO Box 1789
        Jackson, MS 39215-1789
        Telephone: (601) 948-8000
        Facsimile: (601) 948-3000