# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### HATTIESBURG DIVISION

| | |
|---|---|
| **JACOB R. SHEMPER,** Individually and on behalf of all others similarly situated**;** | |
| **Plaintiff,** | **Civil Action No. 2:10CV138-KS-MTP** |
| **v.** | |
| **BP P.L.C.; et al.,** | |
| **Defendants.** | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CAMERON INTERNATIONAL CORPORATION'S MOTION TO DISMISS

Attorneys for Plaintiff, Jacob R. Shemper

Michael J. Shemper (MSB# 100531)
MICHAEL J. SHEMPER, PLLC
119 Hardy Street
Hattiesburg, MS 39401
Tel. (601) 545-7787
Fax (601) 545-1711
Email: mjshemper@megagate.com

Ronald M. Motley (PHV #42331)
Joseph F. Rice (PHV #43744)
Kevin R. Dean (PHV #46089)
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel. (843) 216-9000
Fax (843) 216-9450
Email: OilSpillLitigationMS@motleyrice.com

Table of Contents

TABLE OF AUTHORITIES................................................................................................ii

I.    INTRODUCTION.................................................................................................1

II.   STANDARD OF REVIEW .....................................................................................2

III.  ARGUMENT .......................................................................................................3

      A.  PLAINTIFF MAY BRING CLAIM UNDER STATE AND MARITIME LAW.....................3

            1.   The Court Has Subject Matter Jurisdiction Over Plaintiff's Claims For
                 Damages Under State Law, And Admiralty And Maritime Law,
                 Regardless Of The Applicability Of The Oil Pollution Act Of 1990.................3

                  a.   The OPA Does Not Preempt Plaintiff's State Law Claims.............….....4

                  b.   The OPA Does Not Preempt Plaintiff's Admiralty And Maritime
                       Claims...........................................................................................6

                  c.   This Court Has Subject Matter Jurisdiction Over Plaintiff's Non-OPA
                       Claims – *i.e.,* His State Law And Admiralty And General Maritime
                       Tort Claims – Regardless Of OPA's "Presentment" Requirement….........8

                  d.   Plaintiff's Non-OPA Claims Against A Defendant Not Designated
                       A "Responsible Party" Are Fall Outside The Purview Of OPA…………9

                  e.   The OPA Does NOT Preempt Punitive Damages Claims Available
                       Under State Law And Admiralty And General Maritime Law…….........10

      B.  DEFENDANT'S MOTION TO DISMISS IS PREMATURE BECAUSE ITS CHOICE-OF-LAW
          ARGUMENTS NECESSITATE FACT-BASED INQUIRIES THAT ARE IMPROPER FOR
          RESOLUTION AT THIS STAGE.............................................................................13

      C.  PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE ECONOMIC LOSS RULE................17

            1.   The Circumstances Here Require Specialized Treatment Under The
                 Economic Loss Rule..........................................…......................….....19

            2.   Defendant's Conduct Is Determinative Of Whether Plaintiff's Losses Fall
                 Within The Economic Loss Rule, And As Such, Are Subject To A Merits
                 Based Inquiry.................................................................................21

IV.   CONCLUSION .................................................................................................23

Table of Authorities

**Cases**

*Alliance to Protect Nantucket Sound, Inc. v. United States Dep't of the Army,*
　　398 F.3d 105 (1st Cir. 2005)……………………………………………………...15

*Ashcroft v. Iqbal,*
　　129 S.Ct. 1937, 1949-50 (2009)……………………………………………………2, 3

*Atlantic Sounding Co. v. Townsend,*
　　__ U.S. __, 129 S.Ct. 2561 (2009)………………………………………………...10

*Becker v. Tidewater, Inc.,*
　　581 F.3d 256, 264-65 (5th Cir. 2009)………………………………………………15

*Bell Atlantic Corp. v. Twombly,*
　　550 U.S. 544, 556 (2007)…………………………………………………………2, 3

*Bobbett v. United States,*
　　2009 U.S. Dist. LEXIS 89000 (S.D. Miss. Sept. 28, 2009)…………………………………2

*Bouchard Transp. Co. v. Updegraff,*
　　147 F.3d 1344 (11th Cir. 1998)……………………………………………………10

*Castro v. United States,*
　　560 F.3d 381, 386 (5th Cir. 2009)…………………………………………………2

*Clausen v. M/V New Carissa,*
　　*171 F. Supp. 1127 (D. Or. 2001)*………………………………………………12

*Conoco, Inc. v. Halter-Calcasieu, LLC,*
　　865 So. 2d 813, 822 (La. App. 2003)……………………………………………...21

*Curd v. Mosaic Fertilizer LLC,*
　　No. SC08-1920, **--** So.3d **--,** 2010 Fla. LEXIS 944, 2010 WL 2400384, *10 (Fla., June 17, 2010)…………………………………………………………...19

*Demette v. Falcon Drilling Co., Inc.,*
　　280 F. 3d 492 (5th Cir. 2002)………………………………………………………15

*Diamond Offshore Co. v. A&B Builders, Inc.,*
　　302 F. 3d 531 (2002)……………………………………………………………...15

*Domingue v. Ocean Drilling and Exploration Co.,*
　　923 F. 2d 393, 395 (5th Cir. 1991), *cert.* denied, 502 U S 1033 (1992)…………………14, 15

*EEX Corp. v ABB Vetco Gray, Inc.*,
 161 F. Supp. 2d 747   (S.D. Tex. 2001)……………………………………………...15

*Exxon Shipping v. Baker*,
 128 S.Ct. 2605, No. 07-219 (2008)……………………………………………..11, 12

*Fox v. Taylor Diving & Salvage, Co.*,
 694 F. 2d 1349, 1354 (5th Cir. 1983)……………………………………………...14

*Franchise Tax Bd. v. Construction Laborers Vacation Trust*,
 463 U.S. 1, 9-10 (1983)……………………………………………………………….4

*Gabarick v. Laurin Maritime (America) Inc*,
 623 F. Supp. 741 (E.D. La. 2009)…………………………………………………..8

*Getty Refining & Marketing Co. v. MT FADI B*,
 766 F.2d 829 (3d Cir. 1985)………………………………………………………21

*Grand Isle Shipyard Inc. v. Seacor Marine*,
 *LLC, 589 F.3d 778 (5th Cir. La. 2009*………………………………………………15

*Houston Oil & Minerals. Corp. v. American Int'l Tool Co.*,
 827 F. 2d 1049, 1053 (5th Cir. 1987)……………………………………………14, 15

*Isla Corp. v. Sundown Energy, LP*,
 No. 06-8645, 2007 U.S. Dist. LEXIS 31259, (E.D. La. Apr. 27, 2007)……………...…..9

*Jerome B. Grubart, Inc.  v. Great Lakes Dredge & Dock Co.*,
 513 U.S. 527, 534 (1995)……………………………………………………………16

*Katrina Canal Breaches Litig. v. United States*,
 351 Fed. Appx. 938, 941 (5th Cir. La. 2009)………………………………………….2

*Lane v. Halliburton*,
 529 F.3d 548, 557 (5th Cir. 2008)..…………………………………………………..2

*Louisiana ex rel Guste v. M/V TESTBANK*,
 752 F.2d 1019, 1022 (5th Cir. 1985)……………………………………………..17-19, 21

*Metlife Capital Corp.*,
 132 F.3d 818 (1st Cir. 1997)…………………………………………………………..6

*Miles v. Apex Marine Corp.*,
 498 U.S. 19, 27, 32-33 (1990)………………………………………………………12

*Moragne v. States Marine Lines,*
    398 U.S. 375, 387 (1970)…………………………………………………………………...10

*National Shipping Co. v. Moran Mid-Atlantic,*
    924 F. Supp. 1436 (E.D. Va. 1996)………………………………………………………...5

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001)…………………………………………………………………2

*Robins Dry Dock & Repair Co. v. Flint,*
    275 U.S. 303 (1927)……………………………………………………………17, 18, 21

*Rodrigue v Aetna,*
    395 U S 352 (1969)…………………………………………………………………………15

*Russo v. M/T Dubai Star,*
    2010 U.S. Dist. LEXIS 50967, ……………………………………………………………9

*Sekco Energy v. M/V Margaret Chouest,*
    820 F. Supp. 1008, 1011 (E.D. La. 1993)…………………………………………………21

*Shaughnessy v. PPG Industries, Inc.,*
    795 F.Supp. 193 (W.D. La., 1992)…………………………………………………18, 19, 20

*Sohyde Drilling & Marine Co.,*
    644 F. 2d 1132 (5th Cir. 1981)……………………………………………14, 15, 16, 17

*South Port Marine, LLC v. Gulf Oil Ltd. Partnership,*
    234 F.3d 58, 65 (1st Cir. 2000)………………………………………...……………7, 8, 12

*Texas Exploration & Prod. v. Amclyde Eng'd Prods.,*
    448 F.3d 760, 772 (5th Cir. 2006)………………………………………………...13, 14

*Union Oil v. Oppen,*
    501 F.2d 570, 558 (9th Cir. 1974)……………………………………………………18, 19

*United States v. Locke,*
    529 U.S. 89 (2000)………………………………………………………………………5

*United States v. Egan Marine Corp.,*
    2009 WL 855964 (N.D. Ill. 2009)……………………………………………………6

*United States v. M/V Cosco Busan,*
    557 F.Supp.2d 1058, 1063 (N.D. Cal. 2008)………………………………………6

*United States v. Oswego Barge Corp.,*
    664 F.2d 327 (2nd Cir. 1981)………………………………………………………7

*United States v. Texas*,
    507 U.S. 529, 534 (1993)……………………………………………….…….....11

*Williams v. Potomac Elec. Power Co.*,
    115 F. Supp. 2d 561, 565 (D. Md. 2000)………………………….…………….5, 9

*Woodfork Marine Cooks & Stewards Union*,
    642 F.2d 966, 970-71 (5th Cir. 1981)…………………………………………10

## Federal Statutes

33 U.S.C. § 1321(b)………………………………………………………………11

33 U.S.C. § 1321(o)………………………………………………………………11

33 U.S.C. § 2701 (33)……………………………………………………………9

33 U.S.C. § 2702 (a)……………………………………………………………..5, 10

33 U.S.C. § 2713 (a)……………………………………………………………...8

33 U.S.C. § 2717 (c)……………………………………………………………..5, 10

33 U.S.C. § 2718 (a), (a)(1)(A), (a)(2), (c)…………………………………....4, 5, 10

33 U.S.C. § 2751 (e)(1)-(2)………………………………...………………....6, 10

42 U.S.C. § 9601…………………………………………………………………18

42 U.S.C. § 9607…………………………………………………………………18

43 U.S.C. § 1333(a)(2)(A)………………………………………………………....13

## Federal Regulations

33 C.F.R. § 136.305……………………………………………………………….9

## Other

1990 U.S.C.C.A.N 722, 123-24, 779, 839……………………………………….7, 22

D.  Bagwell, *Hazardous and Noxious Substances,* 62 TUL. L. REV. 433 (1988)……………………18

S. Olssen, *Recovery for the Lost Use of Water Resources: M/V Testbank on the Rocks?,* 62 TUL. L. REV. 271, 300 (1992)18……………………………………………………………..18

## I.     INTRODUCTION

Plaintiff, Jacob R. Shemper, individually and in his capacity as a proposed class representative ("Plaintiff"), submits his Opposition Brief to the Motion to Dismiss (presumably under Rules 12(b)(1) and 12(b)(6)) filed by Cameron International Corporation BP ("Cameron" or "Defendant") (Docket Entry No. 50).  In further support, Plaintiff states as follows.

Plaintiff, whose livelihood is derived from inshore "for hire" charter fishing and guide services performed in the coastal zones and waters of the Gulf of Mexico and surrounding territorial waters, is seeking damages from Cameron and other defendants as a result of the Deepwater Horizon oil spill. Defendant Cameron has filed a motion to dismiss Plaintiff's claims for damages.  Defendant argues that the Outer Continental Shelf Lands Act ("OCSLA") requires that only federal law may apply to this action; that under the alleged federal law, all of Plaintiff's claims, including his non-OPA asserted claims versus Cameron, are preempted by what Cameron alleges to be the exclusive remedy for oil spills, the Oil Pollution Act of 1990 ("OPA"); that Defendant cannot be held liable because Defendant is not a "responsible party" under the OPA; that Plaintiff is barred from suing because he has not met OPA presentment requirements; and that Plaintiff's claims are barred under the economic loss rule.

Defendant's motion should be denied in its entirety.  First, Plaintiff may assert his claims alternatively under state law, general maritime law, as well as under the OPA. The OPA is not Plaintiff's exclusive remedy and specifically contains broad savings clauses for Plaintiff's federal and state law claims and remedies.  Plaintiff has not yet incorporated an OPA claim in his Complaint and is not obligated to satisfy OPA presentment requirements as to his non-OPA claims or "non-responsible" parties.[1] Second, Defendant's motion is premature because it would require resolution of factual matters that cannot be resolved at the pre-discovery state of this case.  Third, the economic loss rule

---

[1] Plaintiff anticipates providing his "presentment" notice in the near future.  Because of ongoing negotiations with BP and the BP Oil Spill Escrow Fund administered by Kenneth Feinberg, Plaintiff has delayed his notice to allow time for the development and promulgation of the "notice" requirement to be applied here.

does not apply to Plaintiff's claims because it was effectively overruled by 1986 CERCLA Amendments, and to the extent it is followed, Plaintiff's operations fall squarely within the "commercial fisherman" exception, the exceptional circumstances of this litigation necessitate their inclusion, and factual determinations (premature at this stage) about Defendant's conduct will determine whether Plaintiff's losses fall within the economic loss rule and whether punitive damages are appropriate.  Finally, Plaintiff has set forth sufficient facts in his Complaint to survive a Rule 12(b)(6) challenge under *Bell Atlantic Corp. v. Twombly*., 550 U.S. 554 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)

## II.    STANDARD OF REVIEW

When faced with a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the party asserting the existence of subject matter jurisdiction bears the burden of proof.  *Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001).  The motion must be denied unless "it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009).  In ruling on such a motion, the court may consider: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts.  *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).  If, however, the court limits its review to the face of the pleadings, the safeguards under Rule 12(b)(6) apply – *e.g*., the court considers all the allegations as true and draws all reasonable inferences in favor of the non-moving party.  *Bobbett v. United States*, 2009 U.S. Dist. LEXIS 89000 (S.D. Miss. Sept. 28, 2009); *see Katrina Canal Breaches Litig. v. United States*, 351 Fed. Appx. 938, 941 (5th Cir. La. 2009).

Dismissal under Rule 12(b)(6) is appropriate only if the court determines that it is beyond doubt that plaintiff can prove no plausible set of facts to support the claim and would justify relief.  *Twombly*,

550 U.S. at 556. In assessing a Rule 12(b)(6) motion, the court accepts as true all facts as plead by the plaintiff, viewing them in the light most favorable to the plaintiff. *Id.*; *see also Iqbal*, 129 S.Ct. at 1949-50. No "probability requirement" exists at the pleading stage; plaintiff must allege only "something beyond … mere possibility." *Twombly*, 550 U.S. at 556-57. A pleading that is "plausible on its face" is sufficient and should not be dismissed. *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S.Ct. at 1949-50. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

## III.    ARGUMENT

### A.    PLAINTIFF MAY BRING CLAIMS UNDER STATE AND MARITIME LAW.

Plaintiff's state and maritime law claims should not be dismissed because they are not, as Defendant urges, preempted by the OPA. Defendant argues that the OPA preempts all state law and maritime claims, and as such, any claims premised on state law or maritime law must be dismissed. To support its argument, Defendant assumes that only federal law applies. As explained below, this conclusion is premature and assumes detailed, complicated factual questions answerable only *after* merits-based discovery. Defendant also ignores the plain text of the OPA that specifically permits Plaintiff to allege his state and maritime law claims here. In particular, because Plaintiff's claims are not governed by the OPA, not only are they not preempted, but also OPA's "presentment" requirement does not bar Plaintiff from asserting them, Plaintiff is not limited to asserting claims against only OPA-designated "Responsible Parties," and OPA's omission of punitive damage from among available remedies does not limit remedies available to Plaintiff.

> **1.    The Court Has Subject Matter Jurisdiction Over Plaintiff's Claims For Damages Under State Law, And Admiralty And Maritime Law, Regardless Of The Applicability Of The Oil Pollution Act Of 1990.**

Defendant overstates the preemptive breadth of the OPA as the exclusive remedy for oil spills. Plaintiff is entitled to assert claims under state and maritime law, pleading his claims in the alternative; and the nature of his claims is considered based on what appears in Plaintiff's complaint.  *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983).  Contrary to Defendant's indication, the OPA has multiple savings provisions preserving Plaintiff's state and maritime law.

### a.      The OPA Does Not Preempt Plaintiff's State Law Claims.

The OPA contains two provisions that dispel the notion that the OPA preempts Plaintiff's state law claims for damages resulting from an oil spill.  Specific language in Section 2718 (a) and (c) clarifies that nothing in the OPA affects application of state law, including common law. That section says:

> (a)  PRESERVATION OF STATE AUTHORITIES … - Nothing in this Act or the Act of March 3, 1851 shall -
>
> > (1) affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to –
> >
> > > (A) the discharge of oil or other pollution by oil within such State; or
> >
> > (2) affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under … State law, including common law.
>
> …
>
> (c)  ADDITIONAL REQUIREMENTS AND LIABILITIES; PENALITIES. – Nothing in this Act … shall in any way affect, or be construed to affect, the authority of the United States or any State or political subdivision thereof –
>
> > (1) to impose additional liability or additional requirements….

33 U.S.C. § 2718(a), (c).

A second provision in the OPA that confirms Congress' intent that the OPA does not preempt Plaintiff from asserting state law claims for recovery, Section 2717, specifically recognizes a plaintiff's right to assert state law claims for oil spill removal costs and damages.  Section 2717(c) provides:

> (c) STATE COURT JURISDICTION – A State trial court of competent jurisdiction over claims for removal costs or damages, as defined under this Act, **may consider claims under this Act _or_ State law** and any final judgment of such court (when no longer subject to ordinary forms of review) shall be recognized, valid, and enforceable for all purposes of this Act.

33 U.S.C. § 2717(c) (emphasis added).

In *United States v. Locke*, 529 U.S. 89 (2000), the Supreme Court explained that the purpose of the OPA savings clause was to preserve state law remedies in oil spill matters.  Justice Kennedy wrote:

> The saving clauses are found in Title I of OPA, captioned Oil Pollution Liability and Compensation and creating a liability scheme for oil pollution. … Placement of the saving clauses in Title I of OPA suggests that Congress intended to preserve state laws of a scope similar to the matters contained in Title I of OPA, not all state laws similar to the matters covered by the whole of OPA or to the whole subject of maritime oil transport. **The evident purpose of the saving clauses is to preserve state laws which, rather than imposing substantive regulation of a vessel's primary conduct, establish liability rules and financial requirements relating to oil spills**. …
>
> Our conclusion is fortified by Congress' decision to limit the saving clauses by the same key words it used in declaring the scope of Title I of OPA. Title I of OPA permits recovery of damages involving vessels "from which oil is discharged, or which pose the substantial threat of a discharge of oil." *33 U.S.C. § 2702(a)*. The saving clauses, in parallel manner, permit States to impose liability or requirements "relating to the discharge, or substantial threat of a discharge, of oil." *§ 2718(c)*.

*Id*. at 105 (emphasis added).

Consistent with the text of the statute and the *Locke* decision, other courts have also held that state causes of action are not preempted by the OPA.  *See, e.g., Williams v. Potomac Elec. Power Co*., 115 F. Supp. 2d 561 (D. Md. 2000); *National Shipping Co. v. Moran Mid-Atlantic*, 924 F. Supp. 1436

(E.D. Va. 1996).  Like these district courts and the Supreme Court, this Court should also find that Plaintiff's state law tort claims are not preempted by the OPA and thus deny Defendant's motion.

### b.      The OPA Does Not Preempt Plaintiff's Admiralty And Maritime Claims.

The OPA contains a third provision, Section 2751, which expressly preserves Plaintiff's admiralty and maritime claims resulting from the oil spill.  Section 2751 provides:

> (e) Admiralty and Maritime Law – Except as otherwise provided in this Act, this Act does not affect -
>
> > (1) admiralty and maritime law; or
> >
> > (2) the jurisdiction of the district courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

33 U.S.C. § 2751(e)(1)-(2).  So the text of the statute itself makes clear that, absent a provision that explicitly changes the rule, the OPA does not preempt admiralty and maritime law and they still apply.

The First Circuit may be the only Circuit to have taken up the meaning of OPA's admiralty savings provision, in *In re: Metlife Capital Corp*., 132 F.3d 818 (1st Cir. 1997).  In *In re Metlife*, the First Circuit held not only that Limitation Act cases cannot bar OPA claims but also that, in light of the savings clause, claims under maritime law are not preempted.  *Id*. at 822-23.  Other courts have similarly recognized that the OPA was not designed to preempt federal law remedies.  *See, e.g., U.S. v. Egan Marine Corp*., 2009 WL 855964 (N.D. Ill. 2009) (US may pursue claims under both OPA and the River and Harbors Act); *United States v. M/V Cosco Busan*, 557 F.Supp.2d 1058, 1063 (N.D. Cal. 2008) (US may pursue claims under other federal statutes in addition to OPA even when seeking to recover the same damages).

Defendant cannot meet the strict requirements needed to establish statutory preemption of admiralty and maritime law.  Because the federal courts are constitutionally afforded jurisdiction over

admiralty and maritime law in Article III, Section 2, clause 1 of the U.S. Constitution, there is an extremely high bar for Congress to change or preempt long-standing maritime law as construed by federal courts. Indeed, in *U.S. v. Oswego Barge Corp.,* 664 F.2d 327 (2nd Cir. 1981), the Second Circuit reviewed Supreme Court decisions and found four factors to be considered in analyzing statutory preemption of maritime law claims. The factors are (1) legislative history; (2) the scope of the legislation; (3) whether judge made law would fill a gap left by Congress' silence or rewrite rules that Congress enacted; and (4) likeliness of Congress' intent to preempt "long established and familiar principles of the common law or the general maritime law." *Id.* at 344. Applying these factors to the context of the OPA statute:

- Legislative History: H.R. Conf. Rept. 101-653 (1990) states that the OPA savings provision "is intended to clarify that the House bill does not supersede [Art. III, Sec. 2, cl. 1 of the Constitution], nor does it change the jurisdiction of the District Courts …." Another legislative reference states, "It is not the intent of the Congress to change the jurisdiction in incidents that are within the admiralty and maritime laws of the United States." 1990 U.S.C.C.A.N. 779, 839.

- Legislative Scope: The OPA defines its scope explicitly through its text. It defines what damages are covered in the Act and the process for pursing the claim, while still being flexible in terms of supplementing rather than supplanting alternative claims and remedies.

- Whether judge made law would fill a gap left by Congress' silence: Applying judge-made maritime law (if it is determined maritime law applies here) allows Plaintiff to pursue claims not covered under the OPA. For example, the OPA is silent as to the potential extreme conduct of Defendant, whereas state and maritime law specifically provide remedies to compensate Plaintiff and punish perpetrators for intentional, willful, wanton or grossly negligent conduct (*i.e.*, punitive damages).

- Likeliness of Congress' intent to preempt "long established and familiar principles of common law or maritime law": The language of the OPA does not contain an explicit preemption clause or otherwise expressly preempt general maritime law. When taken in context with the OPA's strong savings clauses and silence on state and maritime law, the statute's face is not indicative of an intent to preempt those traditional remedies – only to supplement them. *See* Senate Report No. 101-94., 1990 U.S.C.C.A.N. 722, 733

Although in very different factual circumstances in foreign jurisdictions, some courts have found that the OPA provides the exclusive federal remedy *for remedies available under OPA*, thereby limiting the application of general maritime law, *see, e.g.*, *South Port Marine, LLC v. Gulf Oil Ltd.*

*Partnership,* 234 F.3d 58 (1st Cir. 2000), and *Gabarick v. Laurin Maritime (America) Inc,* 623 F. Supp. 741 (E.D. La. 2009), no court has held that the OPA preempts state law claims for remedies not available under the OPA. Neither *South Port Marine* nor *Gabarick* hold that the OPA preempts common law tort claims generally or that the OPA preempts state common law claims for damages not recoverable in an OPA action. In *South Port Marine,* plaintiff's common law state claims were dismissed due to the application of that state's oil pollution compensation statute, **not** as a result of application of the OPA. The *South Port Marine* Court noted that, had the common law tort claims not been dismissed due to application of state statutory law, some of the tort claims may have supported an award of punitive damages under state common law even though it found punitive damages were not recoverable under the OPA.  In *Gabarick,* the court held that maritime law is preempted by the OPA only insofar as the remedies claimed under the common law claims are recoverable under the OPA. Moreover, the *South Port Marine* Court observed that "we have indeed acknowledged that Congress did not intend the OPA to bar the imposition of additional liability by the States."  234 F.3d at 65.

Reading the text of the OPA, *and* the case law that finds OPA does not preempt federal law, *and* the requirements necessary for Congress to show intent to preempt, they all indicate that Plaintiff's claims are not preempted.  Moreover, given the breadth and circumstances surrounding this case, it is questionable as to whether the other cases indicating preemption in certain circumstances are instructive here, or in other jurisdictions incurring continuing and widespread damage from the oil spill.

<blockquote>

c.      **This Court Has Subject Matter Jurisdiction Over Plaintiff's Non-OPA Claims – *i.e.,* His State Law And Admiralty And General Maritime Tort Claims – Regardless Of OPA's "Presentment" Requirement.**

</blockquote>

Because the OPA does not require "presentment" of claims not brought under the OPA, this Court has jurisdiction over Plaintiff's various non-OPA claims regardless of OPA's presentment requirement set out at 33 U.S.C. § 2713(a).  Defendant's contrary argument relies on its flawed idea

that the OPA preempts all of Plaintiff's claims, and that notwithstanding the text of Plaintiff's pleadings, all of the claims *must* be OPA claims subject to the OPA's presentment requirement. Applying this incorrect reading, Defendant contends that even non-OPA claims must be "presented" to one or more "responsible parties" before Plaintiff may pursue non-OPA claims.

But Plaintiff's non-OPA claims – *i.e.*, his state law and admiralty and general maritime claims – were not required to be "presented" under the OPA.  The OPA requires presentment of a claim only insofar as it seeks damages sought under the OPA; it does not apply to – or require "presentment" of – claims for damages not sought under the OPA.  *See, e.g., Russo v. M/T Dubai Star,* 2010 U.S. Dist. LEXIS 50967, Dkt. No. 09-cv-05158, at *7-8   (N.D. Cal. April 29, 2010) (OPA presentment requirement does not apply to claims that do not arise under OPA); *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. 2d at 565 & n.3 (Because the OPA does not preempt state common law actions "there is, in consequence, no requirement for the presentment of claims under OPA prior to commencing suit."); *Isla Corp. v. Sundown Energy, LP*, No. 06-8645, 2007 U.S. Dist. LEXIS 31259, at *4, 2007 WL 1240212, at *1-2 (E.D. La. Apr. 27, 2007) (applying OPA presentation requirement only to claims brought under OPA and not to state law claims).

### d. Plaintiff's Non-OPA Claims Against A Defendant Not Designated A "Responsible Party" Fall Outside The Purview Of The OPA.

The OPA contains nothing to limit Plaintiff from pursuing his state and maritime claims against defendants that have not been designated as a "responsible party" under 33 C.F.R. § 136.305, and as defined at 33 U.S.C. § 2701(33), such as Defendant Cameron.  Cameron argues that since it was not designated a "responsible party" under the OPA, Plaintiff cannot sue it.  For the reasons explained above, the OPA does not preempt Plaintiff's non-OPA claims against Defendant regardless of whether it was designated.  Perhaps aside from the application of the savings clauses, the OPA is completely silent – and not applicable – to defendants not designated.  Because the OPA was constructed to task

- 9 -

only designated responsible parties, see 33 U.S.C. § 2702(a), Defendant cannot seek refuge from state and maritime law claims simply because it was not designated a "responsible party."

### e.   The OPA Does Not Preempt Punitive Damages Claims Available Under State Law And Admiralty And General Maritime Law.

The Court should deny Defendant's motion to dismiss because the OPA does not preempt Plaintiff's non-OPA punitive damage claims, which rest on allegations that, if proven at trial, warrant a punitive damage award.  As explained above, the OPA does not preempt Plaintiff's non-OPA claims under state, admiralty, or maritime law – which includes Plaintiff's punitive damages claims.  Much of Defendant's preemption argument is ultimately intended to preclude any consideration of punitive damages.  But the language in the provisions discussed above – 33 U.S.C. §§ 2717(c), 2718(a)(1)(A) and (a)(2), and 2751(e)(1) and (2) – supports the conclusion that the state, admiralty, or maritime law regarding punitive damages was preserved.[2]  That punitive damages may be recovered in addition to OPA-enumerated damages is consistent with the legislative history of OPA, which demonstrates Congress intended OPA to be gap-filling legislation that created a floor, not a ceiling, when working in conjunction with other laws.[3]

In addition to the long availability of state law claims for punitive damages, the Supreme Court has confirmed that punitive damages are available also for claims under federal maritime law.  *Atlantic Sounding Co. v. Townsend*, __ U.S. __, 129 S.Ct. 2561 (2009).  Like the remedy available to plaintiffs

---

[2] *Bouchard Transp. Co. v. Updegraff*, 147 F.3d 1344 (11th Cir. 1998), citing *Woodfork Marine Cooks & Stewards Union*, 642 F.2d 966, 970-71 (5th Cir. 1981); *Moragne v. States Marine Lines*, 398 U.S. 375, 387 (1970) ("[C]ertainly, it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules.").

[3] The Senate committee report states that what the Nation needed was a "package of *complimentary laws* at the international, national, and State level that will adequately compensate victims."  S. REP. NO. 101-94, at 723 (emphasis added).  This implies that the OPA was not intended to be the sole remedy available to victims. Additionally, the report indicated that the "theory behind the Committee action is that the Federal statute is designed to provide *basic protection*" for victims and that States wanting to impose greater standards may do so.  *Id*. at 723 (emphasis added).

alleging negligence and wantonness in *Atlantic*, Plaintiff's claims of negligence and wantonness in this case should also entitle him to pursue punitive damages.

The Supreme Court's analysis in *Exxon Shipping v. Baker*, 128 S.Ct. 2605 (2008), is instructive regarding preemption of punitive damages in maritime cases.   In support of their opposition for punitive damages, Exxon argued that the Clean Water Act ("CWA") preempted application of punitive damages. But the CWA, like the OPA, contained a savings provision.  Specifically, under 33 U.S.C. § 1321(b), the CWA protects "the navigable waters of the United States, adjoining shorelines, . . . [and] natural resources" of the United States, subject to "obligations . . . under any provision of law for damages to any publicly owned or privately owned property resulting from a discharge of any oil." 33 U.S.C. § 1321(o).   The Court, responding to possible preemption of punitive damages (or other additional remedies for that matter) as a result of the CWA's silence, stated:

> Exxon could be arguing that, because the saving clause makes no mention of preserving punitive damages for economic loss, they are preempted.  But so, of course, would a number of other categories of damages awards that Exxon did not claim were preempted.  If Exxon were correct here, there would be preemption of provisions for compensatory damages for thwarting economic activity, or, for that matter, compensatory damages for physical, personal injury form oil spills or other water pollution.  **But we find it too hard to conclude that a statute expressly geared to protecting "water," "shorelines," and "natural resources" was intended to eliminate _sub silentio_ oil companies' common law duties to refrain from injuring the bodies and livelihoods of private individuals.**
>                                   \*\*\*
> In order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law; nor for that matter do we perceive that punitive damages for private harms will have any frustrating effect on the CWA remedial scheme, which would point to preemption.

*Baker*, 128 S. Ct. at 2618-19 (quoting *U.S. v. Texas*, 507 U.S. 529, 534 (1993)) (emphasis added).

This Court should implement the same analysis as the Supreme Court.  Like the CWA, the OPA is *silent* on punitive damages.  Mere silence does not and cannot "evidence a clear intent to

occupy the entire field of marine pollution remedies" as required by *Baker,* nor could it show a "*clear indication* of congressional intent to occupy the entire field" of remedies addressed by the common law. *Id.* Because the clear purpose of the OPA, like the CWA, is to protect the waters, shores, and natural resources at risk to oil pollution, the deterrence mechanism behind punitive damages would not frustrate the OPA's purpose.

Any suggestion, relying on Jones Act cases such as *South Port Marine* or *Clausen v. M/V New Carissa,* 171 F. Supp. 1127 (D. Or. 2001), that Plaintiff is not entitled to punitive damages, is outdated because both of those case (2000 and 2001 cases) pre-date the Supreme Court's 2008 decision in *Baker.* Furthermore, both cases reached their respective determinations based on *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990), a Jones Act case – not a water pollution case. Instead of following the *Miles* Court's policy guidance framework, the more recent *Baker* decision looked to the CWA to determine whether the statute evidenced "a clear indication of Congressional intent to occupy the entire field of pollution remedies." *Baker*, 128 S. Ct. at 2619 (internal citations omitted); *see also Miles*, 498 U.S. at 27, 32-33 (in *Miles* the Court was concerned that neither the Jones Act nor DOHSA allowed recovery for loss of society damages, and wanted to preserve uniformity found in previous maritime death cases). Clearly, the *Baker* analysis is the proper analysis for determining whether punitive damages are preempted in oil pollution cases. *See* Brief of Petitioner at 28-29, 35-36, *Exxon Shipping Co. v. Baker*, No. 07-219 (The Court in *Baker* refused Exxon's invitation to use the rationale of *Miles*, *Guevarra*, and *Glynn* [looking to analogous statutes for "policy guidance"] to forbid punitive damages in a maritime pollution case).

Accordingly, Defendant's motion to dismiss should be denied because Plaintiff's non-OPA punitive claims are not preempted by OPA.

**B.    DEFENDANT'S MOTION TO DISMISS IS PREMATURE BECAUSE ITS CHOICE-OF-LAW ARGUMENTS NECESSITATE FACT-BASED INQUIRIES THAT ARE IMPROPER FOR RESOLUTION AT THIS STAGE.[4]**

Defendant's motion should be denied because resolving it now requires the Court to make impermissible factual determinations, before essential discovery has developed the facts, to decide what law applies – state, maritime, or both.  Defendant's motion is largely premised on the alleged complete preemptive effect of the OPA over all of Plaintiff's claims, whether under state or maritime law. Setting aside Defendant's erroneous appraisal of the OPA's preemptive breadth, the Court cannot resolve the motion until it determines which law governs.  But that determination cannot be made until after a thorough analysis of the specific facts and circumstances surrounding the Deepwater Horizon drilling rig operation at the Macondo well site, the "blow out," the resulting explosion and unprecedented oil spill, and a host of other factual issues that factor into a choice of law determination. Considering this litigation remains in its earliest stages and defendants have not even filed answers, insufficient facts are before the Court for a choice of law determination to be made now, and Defendant's motion should be denied.

One example of how the choice-of-law issue requires premature factual determination arises in the context of determining the application of the state law borrowing provision of the Outer Continental Shelf Lands Act ("OCSLA").  *See* 43 U.S.C. § 1333(a)(2)(A); *Texas Exploration & Prod. v. Amclyde Eng'd Prods.*, 448 F.3d 760, 772 (5th Cir. 2006) ("OCSLA extends federal law to the Outer Continental Shelf and borrows adjacent state law as a gap-filler.").  To determine if the OCSLA's state law borrowing provision applies, the Court must determine whether these three necessarily fact-

---

[4] Defendant Cameron has essentially conceded that its motion is premature.  It filed a dispositive motion on the cusp of the Judicial Panel of Multi-District Litigation's consolidation hearing, involving the hundreds of cases filed in many jurisdictions before more than 50 judges.  Immediately after Cameron filed its Motion, it filed a Motion to Stay stating the effect of ruling on the motion to dismiss, would "… not be binding on any party in the MDL proceeding…" forcing all parties "… to brief the same federal legal issues in the MDL proceeding…" again. Defendant Cameron's Motion to Stay, *Bon Secour Fisheries, Inc., v. BP plc*, Dkt. No. 10-CV-00206-KD-N (Docket Entry 68, filed June 23, 2010), at 2.

determinate conditions exist: (1) the controversy must arise on a situs covered by OCSLA (*i.e.*, the subsoil, seabed, or artificial structures permanently *or temporarily* attached thereto); (2) federal maritime law must not apply of its own force; and (3) the state law must not be inconsistent with Federal law. *Texas Exploration*, 448 F.3d at 774.

Although analysis of the propriety of applying maritime law has long been considered a "fact based inquiry," *Domingue v. Ocean Drilling and Exploration Co.*, 923 F. 2d 393, 395 (5th Cir. 1991), *cert*. denied, 502 U S 1033 (1992), Defendant urges the Court to draw conclusions before any facts have been discovered.  In fact, Cameron argues here that OCSLA clearly applies because the failure attributed to Cameron concerns the alleged failure of the blowout preventer device (BOP) that Cameron manufactured, designed, supplied, installed, and/or maintained and that was attached to the wellhead on the seafloor at the location of the initial incident involving the Deepwater Horizon.  *See, e.g*., Complaint, at ¶¶ 30, 172-184.   But other defendants in the litigation contest the OCSLA's application, contending that the Deepwater Horizon oil rig was not a "situs" covered by OCSLA. Resolving the question necessitates factual inquiry that has yet to happen in the litigation.

Even in the Jones Act personal injury context, where the Fifth Circuit historically has liberally applied the Act to insure compensation to injured seamen, *See Houston Oil & Mins. Corp. v. American Int'l Tool Co.*, 827 F. 2d 1049, 1053 (5th Cir. 1987); *see also Sohyde Drilling & Marine Co.*, 644 F. 2d 1132 (5th Cir. 1981) ("we are not convinced that the term 'vessel' for Jones Act purposes, which is subject to liberal construction consistent with the purposes of the Act, is necessarily a vessel for other purposes…."), it has been stated that "unconventional craft" such as drilling or storage barges and dredges "[a]t the very least…must be in use for navigation or direct commerce at the time of the accident" to constitute a vessel.  *See Fox v. Taylor Diving & Salvage, Co*., 694 F. 2d 1349, 1354 (5th Cir. 1983).  As with the Jones Act cases, the contract dispute analysis used to determine whether

- 14 -

maritime law applies differs from the OCSLA analysis (which Plaintiffs agree is the proper analysis here).  *See Domingue*, 923 F.2d at 395 (whether a contract is a maritime contract depends on the relationship of the subject matter of the agreement to a maritime activity).

Even the issue of whether the Deepwater Horizon is a "vessel" is a fact-sensitive issue that requires discovery for resolution.  Although drilling apparatus may be considered a "vessel" in some factual scenarios for purposes of determining whether maritime law applies, courts interpreting the OCSLA (as opposed to Jones Act cases) have concluded that semi-submersible oil drilling rigs even temporarily attached to the seabed of the Outer Continental Shelf satisfy the situs requirement of the OCSLA.[5]  In *EEX Corp. v ABB Vetco Gray, Inc*., 161 F. Supp. 2d 747 (S.D. Tex. 2001), the court observed that Congress amended the OCSLA in 1978 to include vessels attached to the sea floor.  *Id.* at 749.  The Court opined: "under the [OCSLA], a vessel ceases to be a vessel the moment it attaches itself to the Shelf; it has become a tiny federal enclave not governed by international admiralty law." *Id.* at 751 (citing *Rodrigue v Aetna*, 395 U S 352 (1969); *Demette v. Falcon Drilling Co., Inc*., 280 F. 3d 492 (5th Cir. 2002)); *see also*, *Diamond Offshore Co. v. A&B Builders, Inc*., 302 F. 3d 531 (2002); *Domingue*, 923 F. 2d 393; *Houston Oil & Minerals*, 827 F. 2d 1049; and *Sohyde*, 644 F. 2d 1132.

Until formal discovery evinces the degree to which any element of the cause of the oil spill – whether the Deepwater Horizon, Cameron's failed BOP, or otherwise – was attached to the seabed (even if only temporarily) or was subsoil, insufficient facts exist to determine if an OCSLA "situs" exists. Discovery will reveal the details of the situs of the tort here –*i.e*., to what degree the elements of

---

[5] *See e.g., EEX Corp. v ABB Vetco Gray, Inc.*, 161 F. Supp. 2d 747 (S.D. Tex. 2001); *see Becker v. Tidewater, Inc*., 581 F.3d 256, 264-65 (5th Cir. 2009) (jack-up oil rig satisfies OCSLA situs test); *Demette v. Falon Drilling Co., Inc*., 280 F.3d 492, 498 (5th Cir. 2002) (same), *overruled on other grounds, Grand Isle Shipyard Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. La. 2009); *Alliance to Protect Nantucket Sound, Inc. v. United States Dep't of the Army*, 398 F.3d 105 (1st Cir. 2005), quoting H.R. Rep. No. 95-590, at 128 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450, 1534 ("Because of the development of relatively impermanent structures, which did not clearly fall within the 'fixed structures' rubric, Congress amended Subsection (a) in 1978 to apply instead to 'all artificial islands and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom.'").

the tort occurred on the Deepwater Horizon, whether the oil rig was ever (even temporarily) attached to the seabed, and whether any cause of the explosion and resulting oil gush occurred at the seabed or subsoil as a result of equipment, additives, and/or devices attached to or used to go into the Outer Continental Shelf for this well – including Cameron's failed BOP.  These are merely examples of why factual discovery is essential to determining the applicable law(s).

Analysis into the existence of the second condition necessary to apply the OCSLA's state law borrowing provision (whether maritime law applies of its own force) similarly shows that resolution of the choice-of-law issue at this stage would require premature factual determination.  For maritime law to apply of its own force, conditions both of *location* and of *connection with maritime activity* must exist.  *Jerome B. Grubart, Inc.  v. Great Lakes Dredge & Dock Co*., 513 U.S. 527, 534 (1995).  A court applying the *location* test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. *Id.*  Until the facts are determined, no determination can be made as to whether any part of the tort occurred far beneath the Deepwater Horizon, at the seabed.  A court applying the *connection* test must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." *Id.*  Although this determination must also be considered "in light of the facts of the instant case," *Sohyde,* 644 F.2d at 1136, the determination here, involving a leak under a stationary oil rig, should not be made based on any comparison with cases involving leaks from oil tankers transporting oil.  Substantial difference exists between oil tankers transporting oil (overseas transport is a traditionally maritime activity) and oil rigs drilling for oil (oil exploration is not a traditionally maritime activity).

In *Sohyde*, a gas leakage case involving the failure of a blow-out preventer (similar to allegations against Cameron) on a submersible drilling barge, the Fifth Circuit applied four factors to

determine that the tort was *not* substantially related to traditionally maritime activity and thus state law applied. *Id*. at 1138. The factors considered are: "(i) The functions and roles of the parties; (ii) the types of vehicles and instrumentalities involved; (iii) the causation and type of injury; and (iv) traditional concepts of the role of admiralty law." *Id*. at 1136. Observations from *Sohyde* relevant to this case include (1) the functions and roles of the well operators – namely, to obtain production from the well – was "hardly of a peculiarly maritime nature," *id*.; (2) the instrumentalities involved were essentially the same as those used for land-based operations (including, *e.g*., blowout preventers, tubing, drilling mud, etc.) and were not of a peculiarly "salty nature," *id*. at 1137; and the causation and type of injury, determined after detailed evidence was vetted in a bench trial, had little maritime character. *Id*. at 1138.

Without a thorough merits-based inquiry, it is unclear whether maritime or state law will apply to this litigation. Defendant's unsupported, factual assertions and characterizations do not resolve these issues. Plaintiff is entitled to his own investigation through merits-based discovery to determine whether state or maritime law does (or does not) apply. Accordingly, Defendant's motion should be denied.

## C.   PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE ECONOMIC LOSS RULE.

Plaintiff's claims are not barred by the economic loss doctrine. The rule, as applied in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927), and by the Fifth Circuit in *Louisiana ex rel Guste v. M/V TESTBANK*, 752 F.2d 1019, 1022 (5th Cir. 1985) ("*The TESTBANK*"), generally provides that no recovery may be had for economic loss absent physical injury to a proprietary interest. But the rule does not apply here.

First, the rule was effectively overruled by 1986 amendments to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA," also known as "The

Superfund Act", 42 U.S.C. § 9601 et. seq.).  *See* D. Bagwell, H*azardous and Noxious Substances*, 62

TUL. L. REV. 433, 452 n.26 (1988).  The 1986 amendment, passed just after *The TESTBANK*, provides:

> The owner or operator of a vessel shall be liable in accordance with this section, under maritime tort law, and as provided under section 9614 of this title notwithstanding any provision of the Act of March 3, 1851 (46 U.S.C. 183ff) ["The Limitation of Liability Act"] or the absence of any physical damage to the proprietary interest of the claimant.

42 U.S.C. § 9607 (h).  One prominent admiralty commentator interprets the provision to reverse the

rule applied in *Robins Dry Dock* and *The TESTBANK* cases, explaining:

> The subsection [42 U.S.C. § 9607 (h)] can be understood to mean that the requirement of physical injury to proprietary interest and the Limitation of Liability Act are inapplicable in three situations: (1) actions brought under section 9607 of CERCLA, namely the Act's liability provisions; (2) actions brought under general maritime law; and (3) actions brought under state law pursuant to the authority of section 9614 of CERCLA.

S. Olssen, *Recovery for the Lost Use of Water Resources: M/V Testbank on the Rocks?,* 67 TUL. L.

REV. 271, 300 (1992).

Second, even to the extent that the economic loss rule has been applied in the Fifth Circuit,

plaintiffs engaged in commercial fishing and guide operations, such as Plaintiff here, are exempt from

the general rule.  *The TESTBANK*, 752 F.2d at 1027; *Shaughnessy v. PPG Industries, Inc.*, 795 F.Supp.

193 (W.D. La. 1992) (fishing guide is equated with commercial fishermen and equally entitled to

exception from the economic loss rule).  One goal of maritime law is to protect and promote the

interests of fishermen and the owners of fishing vessels.  *Union Oil v. Oppen*, 501 F.2d 558 (9th Cir.

1974).  In addition to recognizing that fishermen have historically enjoyed a protected position under

maritime law, the court in *The TESTBANK* also explained that, because commercial fishermen are

foreseeable plaintiffs whose interests oil companies have a duty to protect when conducting drilling

operations, their losses resulting from an oil spill are foreseeable and direct consequences of the spill.

*Id.* Accordingly, operators of commercial fishing operations, plaintiffs whose economic losses are characterized as "of a particular and special nature," *id.*, quoting *Union Oil Co. v. Oppen*, 501 F.2d at 570, may recover economic damages resulting from an oil spill. Most recently, the Supreme Court of Florida upheld a plea for economic damages by commercial fishermen for destruction to fishing grounds. *Curd v. Mosaic Fertilizer LLC*, No. SC08-1920, **--** So.3d **--,** 2010 Fla. LEXIS 944, 2010 WL 2400384, *10 (Fla., June 17, 2010).

Plaintiff's losses here, like those in *The TESTBANK*, are recoverable as foreseeable and direct consequences of the spill. *See Shaughnessy*, 795 F.Supp. 193. Because of the Deepwater Horizon oil spill and the subsequent closures, Plaintiff's fishing and guide operations have suffered significant damage. Plaintiff's damages are unique to this case and warrant protection under accepted maritime law given their close nexus with Plaintiff's fishing operations.

Finally, upon additional investigation of the facts and upon determination that state common law applies, Plaintiff's damages would be recoverable as foreseeable under common law tort law.

For these reasons, Plaintiff has stated claims for which relief can be granted to survive an economic loss challenge. Because of the commercial fishing exception and the close nexus between Plaintiff's fishing operation and his losses, Defendant's economic loss arguments should be denied.

        1.     **The Circumstances Here Require Specialized Treatment Under The Economic Loss Rule.**

Defendant erroneously compares this unprecedented oil spill to previous chemical spills and argues that damages to Plaintiff's business operations were too unforeseeable and speculative to warrant recovery. But this is not a typical spill or a typical environmental disaster. The Deepwater Horizon oil spill is the **<u>worst</u>** environmental disaster in U.S. history. The oil slick, which spreads thousands of square miles, has almost completely shut down all fishing operations in the Gulf. At the

same time, the presence of crude oil in the Gulf continues to wreak unprecedented havoc on the coastline where it slams onto the beaches and saltwater marshes daily without end.

Predictably, charter and commercial fishing in the Gulf have been devastated. But unlike other environmental disasters that occur and end quickly, albeit giving rise to a quicker assessment of impact, the Deepwater Horizon oil spill is colossal and continuing. Commercial fishermen that could move outside their normal fishing areas are finding secondary areas closed. Such events are not unforeseeable. The oil spill has been billowing continuously into the Gulf for months at thousands of barrels of oil per day, closing off much of the gulf from fishing operations, devastating both the economy and the marine population, and deterring patrons and vacationers from these areas.

Oil spills of this size present a direct impact on the fishing and seafood industries due to the massive destruction to ecosystems. The Exxon Valdez disaster, which spilled about 11 million gallons of oil into Prince William Sound, impacted 10,000 square miles of surrounding marine ecosystems and 1,000 miles of coastline. Nearly two decades after that spill, some resident species injured by the spill have not recovered. *See* Status of Injured Resources and Services, Exxon Valdez Oil Spill Trustee Council, http://www.evostc.state.ak.us/Recovery/status.cfm (last visited August 1, 2010).

The exception to the economic loss rule applies also to industries that suffer losses that may cease their operations. In *Shaughnessy*, the court ruled that a hunting and fishing guide business was entitled to purely economic losses because the business' livelihood was wholly reliant on the physically damaged objects. 795 F. Supp. at 196. The court held that the plaintiff, a fishing guide, was entitled to treatment as a commercial fisherman, explaining:

> As a fishing guide he is no less financially dependent on the condition of the sea than is a commercial fishermen. Further, he is no less exposed to the perils of the sea than a commercial fisherman who operates from a port. Finally, like a commercial fisherman, when the fish and game residing in the waters he plies perish, so does his business. … Thus, we find a greater foreseeability to exist from similar

> incidents for the injury to [the plaintiff, a fishing guide] and commercial fishermen than to the plaintiffs before the Fifth Circuit in *Testbank*. Accordingly, we believe [the plaintiff] is entitled to an exception to the rule of *Robins Dry Dock* as were the commercial fishermen in *Oppen* and in *Testbank* at the District Court.

*Id.* at 197.

For these reasons, denying Plaintiff – or any similarly situated plaintiff that is suffering from the entire and continuing closure of fishing and guide services in the gulf and surrounding waters affected by Defendant's oil spill – any of its maritime and/or common law remedies would work a tremendous injustice on an innocent plaintiff and reward the alleged shameful conduct of the defendants.  Plaintiff is entitled to pursue his state and maritime remedies so as to avoid unjust and unfair results.  *See The TESTBANK*, 752 F.2d at 1029 (recognizing that adherence to the bright line approach can create unjust and unfair results for cases that lie on the "edge" of the rule); *see also Sekco Energy v. M/V Margaret Chouest*, 820 F. Supp. 1008, 1011 (E.D. La. 1993) (The *Robins Dry Dock* rule "does not function to bar every single economic loss claim that is unaccompanied by physical damage. As with any legal principle, the one at hand must be construed and applied in light of the policy which encouraged its creation in the first place.")

## 2.  Defendant's Conduct Is Determinative Of Whether Plaintiff's Losses Fall Within The Economic Loss Rule, And As Such, Are Subject To A Merits Based Inquiry.

As indicated in the cases analyzing the economic loss doctrine, Defendant's conduct is important in determining whether the doctrine even applies.  Indeed, the economic loss rule may not apply if Defendant's gross, reckless, willful, wanton and/or intentional conduct caused Plaintiff's damages.  *See Conoco, Inc. v. Halter-Calcasieu, LLC*, 865 So. 2d 813, 822 (La. App. 2003); *Getty Refining & Marketing Co. v. MT FADI B*, 766 F.2d 829 (3d Cir. 1985) (applying *Robins Dry Dock* where economic harm results from unintentional maritime torts); *see also The TESTBANK*, 752 F.2d

1019.  Determining Defendant's conduct is a merits-based inquiry, requiring a thorough discovery investigation.

Unfortunately, all claimants, including Plaintiff in the present motion, were not privy to the internal decisions and discussions among the various defendants regarding the drilling, cementing, application and analysis of the blow out preventer, or the critical decisions leading to the Deepwater Horizon explosion.  Even after the leak occurred, Plaintiff does not have all necessary information to determine which steps the defendants took, or intentionally avoided, in laying out their remedial measures for protecting coastlines and fishing estuaries from the approaching oil.  All of these documents and discussions would be available to Plaintiff in formal discovery – to which Plaintiff is entitled.  Importantly, Plaintiff has yet to receive an answer from the defendants to the allegations in his complaint. As a result, the applicability of the economic loss rule to this case has yet to be determined.

Recent examples from the Exxon Valdez oil spill disaster indicate Plaintiff's investigations may show the reckless, wanton and/or intentional conduct of the defendants.  For example, evidence dating back to the Exxon Valdez disaster demonstrates the intentional lack of preparedness in the oil industry for major spills. Indeed, reports indicate that oil company response was "… unreasonably slow [and] confused," S. Rep. No. 101-94, at 2 (1989), reprinted at 1990 U.S.C.C.A.N. 722, 723-24, and "was clearly inadequate to contain and recover the spilled oil." United States General Accounting Office, Adequacy of Preparation and Response to the Exxon Valdez Oil Spill 1 (1989).  The problems identified with the inadequate response "ranged from a shortage of equipment and skilled personnel to inadequate communications and organizational structures."  Effectively, "[m]ajor problems were encountered because no one had realistically prepared to deal with a spill of that magnitude in the Prince William Sound."  *Id.* at 1.  Compounding matters was the ineffectiveness of the recovery techniques used to manage the spill. *Id.* at 2.

The accounts from the Exxon Valdez disaster are all sadly too ironic and seem to paint a very close picture to the type of behavior leading up to the Deepwater Horizon spill and the failures to manage the resulting leak.  Recent accounts have even reported that BP was largely responsible for the inadequacies in response preparedness early in the Exxon Valdez case and employed the same insufficient measures as it has today.  *See, e.g.*, Joe Stephens, *The Valdez's unheeded lessons; BP was part of Alaska response, but decades later same problems persist*, The Washington Post, July 14, 2010, at A-Section, page A01, *available at* http://www.washingtonpost.com/wp-dyn/content/article/2010/07/13/AR2010071306291.html.  This, combined with the alleged conduct among the defendants leading up to the Deepwater Horizon explosion, including Cameron's alleged knowledge of the facts, circumstances, and the unreasonably dangerous conditions associated with its BOP, its use and operation, all suggest the defendants were engaged in conduct that falls well beyond simple negligence and/or product defect claims.[6]  Plaintiff must have an opportunity to flush out all of this information in discovery and determine the nature of all of the parties' conduct.

For these reasons, Plaintiff is entitled to merits based discovery to determine the specific conduct of the parties, and Defendant's arguments must fail, and its motion must  be denied.

## VI.   CONCLUSION

For the reasons set forth above: the OPA does NOT preempt Plaintiff's state and maritime law claims; Defendant's choice of law arguments are premature and necessitate resolution of factual issues that are improper for resolution before full discovery has been completed; and the economic loss rule

---

[6] *See* Ben Casselman & Russel Gold, *BP Decisions Set Stage for Disaster*, The Wall Street Journal, May 27, 2010, *available at* http://online.wsj.com/article/SB10001424052748704026204575266560930780190.html; *see* also Douglas A. Blackmon, Vanessona O'Connell, Alexandra Berzon & Ana Campoy, *There Was 'Nobody in Charge'*, The Wall Street Journal, May 27, 2010, *available at* http://online.wsj.com/article/SB10001424052748704113504575264721101985024.html?mod=WSJ_hpp_LEFTTop Stories#articleTabs=article

does NOT bar recovery for Plaintiff's claims.   Therefore, Defendant's motion to dismiss should be

DENIED.

Respectfully submitted, this 3rd day of August, 2010

For Jacob R. Shemper, plaintiff individually and
on behalf of all others similarly situated;

**/s/ Michael J. Shemper**
Michael J. Shemper (MSB# 100531)
MICHAEL J. SHEMPER, PLLC
119 Hardy Street
Hattiesburg, MS 39401
Tel. (601) 545-7787
Fax (601) 545-1711
Email: mjshemper@megagate.com

**/s/ Kevin R. Dean**
Ronald M. Motley (PHV #42331)
Joseph F. Rice (PHV #43744)
Kevin R. Dean (PHV #46089)
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel. (843) 216-9000
Fax (843) 216-9450
Email: OilSpillLitigationMS@motleyrice.com

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the Plaintiff's Memorandum in Opposition to Defendant Cameron International Corporation's Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.


Dated:  August 3, 2010.

/s/ Kevin R. Dean
MOTLEY RICE LLC
Kevin R. Dean  (PHV # 46089)
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
(843) 216-9000
OilSpillLitigationMS@motleyrice.com